COMMONWEALTH vs. BRIAN P. BOISELLE.

Essex. April 7, 1983. — July 26, 1983.

Present: GRANT, KAPLAN, & WARNER, JJ.

*Identification. Practice, Criminal,* Failure to make objection, Sentence.
*Robbery. Witness,* Bias.

A judge did not err in denying a criminal defendant's motion to suppress a
    witness's corporeal identifications of him, based on the defendant's
    contention that they had been tainted by that witness's prior photo-
    graphic identification which had been suppressed, where clear and
    convincing evidence established that the subsequent corporeal identifi-
    cations were from a source, namely the witness's memory of her obser-
    vations of the defendant during the commission of the crimes, inde-
    pendent of the suppressed photographic identification. [394-399]
A criminal defendant's contention that he was prejudiced by not being
    allowed at trial adequately to cross-examine a prosecution witness was
    not supported by the trial transcript, which revealed no objection by
    defense counsel to whatever the judge may have said at an unrecorded
    bench conference. [399]
Evidence that, during a robbery at a restaurant, but after two employees
    had given the robber money from a cash register, the robber took a
    butcher knife from the counter and used it to cut telephone wires and
    to back the employees into another room, was sufficient to warrant a
    verdict of guilty of armed robbery. [399-400]
No substantial risk of a miscarriage of justice was created at a criminal
    trial by the judge's permitting the testimony of two prosecution wit-
    nesses who had been found in contempt at the defendant's probable
    cause hearing, where the record of the probable cause hearing gave no
    support to the defendant's contention, made for the first time on ap-
    peal, that the finding of contempt and the confinement of one of the
    witnesses in jail had a coercive effect on their trial testimony, and
    where events at that hearing had been fully explored during cross-
    examination of the witnesses at trial. [400-401]
Where a sentence imposed on a defendant convicted of attempted robbery
    exceeded the maximum prescribed by G. L. c. 274, § 6, this court re-
    manded the case for resentencing. [401-402]

INDICTMENTS found and returned in the Superior Court Department on March 9, 1981.

The cases were tried before *Brady, J.*

*Arlene Beth Marcus* for the defendant.

*Lila Heideman,* Assistant District Attorney, for the Commonwealth.

WARNER, J. The defendant was convicted by a jury in the Superior Court on six indictments, two for armed robbery while masked,[1] three for robbery,[2] and one for attempted robbery.[3] He was given concurrent sentences of six to ten years for the masked armed robbery convictions and five to seven years for the remaining convictions. The defendant asserts error in a ruling on a motion to suppress identification testimony and at trial. On our own motion, we consider an error in sentencing on the conviction of attempted robbery.

1. *The motion to suppress.* The defendant moved to suppress all of the pretrial identifications and subsequent trial identifications of the defendant by witnesses Barbara Vernile and Julie O'Neil. The motion with respect to Vernile was denied in its entirety, and the defendant does not question that ruling. The judge suppressed O'Neil's photographic identification of the defendant as "highly and unnecessarily suggestive," because O'Neil knew that one Brian Boiselle had been arrested in connection with the robberies and recognized that name under the defendant's photograph before identifying him, but the judge denied the motion to suppress her subsequent corporeal identifications, including any which would occur at trial.[4]

The only issue raised on appeal by the defendant is whether the corporeal identifications by O'Neil were tainted by her

---

[1] See G. L. c. 265, § 17. The armed robberies of two persons occurred at the same time on September 16, 1980. See *Commonwealth* v. *Levia,* 385 Mass. 345, 350-351 (1982).

[2] See G. L. c. 265, § 19. The unarmed robberies occurred on September 18 and September 24, 1980.

[3] See G. L. c. 274, § 6. The attempted robbery occurred on October 1, 1980.

[4] The Commonwealth has not challenged the judge's suppression ruling.

one prior photographic identification which the motion judge suppressed. When an identification is suppressed because the defendant has carried his burden of establishing that the identification was unnecessarily suggestive, the Commonwealth must then "assume the burden of establishing by 'clear and convincing evidence' that the proffered identification has a source independent of the suggestive confrontation." *Commonwealth* v. *Botelho*, 369 Mass. 860, 868 (1976). The motion judge concluded that O'Neil's corporeal identifications were and would be the products of an independent source.

We summarize the relevant findings of fact of the judge on the motion to suppress. In the late morning of September 16, 1980, shortly after a Pizza Hut restaurant in Haverhill opened for business, a man wearing a ski mask, with the eye and mouth area cut out, entered, stated that "it was a holdup," and demanded money from the two women employees, Barbara Vernile and Julie O'Neil. The incident lasted for at least eight to nine minutes. The restaurant, and in particular the area where the robbery occurred, was well lighted. O'Neil testified that she could see the robber's eyes, mouth and eyebrows, and that he had big brown eyes which she would never forget. She further testified that at all times she was approximately two feet away from the robber, and during almost all of the time she looked at him. She described him as having an unusual gait. Vernile's point and period of observation were about the same. She was "impressed" with the robber's dark brown eyes and noted a sway to his walk. The defendant fit the description testified to by both women.

Two days later, on September 18, 1980, a person entered the restaurant about the same time of day as before, wearing the same type ski mask and said, "I'm Plaistow's[5] finest junkie and I'm back." This incident lasted about five minutes. O'Neil said that the robber was the same man, gave

---

[5] The trial transcript reveals that the restaurant is located on Plaistow Road in Haverhill.

substantially the same physical description of him, and noted his big brown eyes, dark eyebrows and his lips. She was at times two feet away from him and never turned her back on him. Vernile was not present on this occasion.

Six days later, on September 24, 1980, when O'Neil and Vernile were both present, a person both women described as the same man entered the restaurant wearing the same type mask. This incident lasted about five minutes. O'Neil was about two feet away from the robber and observed his big brown eyes and his lips. The lighting in the restaurant was very good. Both women noted the robber's distinctive walk.[6]

On October 4, 1980, Vernile and O'Neil were shown the 1976 Haverhill high school yearbook. Seated separately in the restaurant, each identified the defendant's photograph as that of the intruder in the restaurant on each of the incidents described for which he was indicted and during which each was present. Both knew that someone had been arrested for the crimes, but only O'Neil knew that one Brian Boiselle had been arrested.[7] Further, and apparently controlling in the judge's view, O'Neil saw the defendant's name under his picture before making the identification.

A little over three and a half months later, on January 14, 1981, while they waited in the lobby of the courthouse prior to the defendant's probable cause hearing, Vernile and O'Neil saw and identified the defendant as the robber. He had not been pointed out by the police; he was not in the company of police or handcuffed; and there were twenty-five to thirty other men and women in the lobby at the time. Both women apparently identified the defendant at the probable cause hearing, and both identified him at trial.

The judge's findings of fact may be disputed only if there is clear error. *Commonwealth* v. *Moon,* 380 Mass. 751, 756

---

[6] The attempted robbery for which the defendant was charged occurred on October 1, 1980, when O'Neil was not present, and the circumstances are not, therefore, relevant to our consideration of the ruling on the motion to suppress.

[7] There was no finding as to how O'Neil acquired this information.

(1980). For reasons which are apparently not the fault of either party, the transcript of the suppression hearing has not been made available to us.[8] No issue has been raised regarding the unavailability of the transcript, and no effort has been made to reconstruct the proceedings. See *Commonwealth* v. *Harris*, 376 Mass. 74, 77, 78-79 (1978). Consequently, there is no basis for disputing the judge's findings.

The motion judge's conclusions, while given substantial deference, are nonetheless subject to review. *Commonwealth* v. *Moon, supra* at 756. *Commonwealth* v. *Worlds*, 9 Mass. App. Ct. 162, 166 (1980). In reviewing those conclusions we will apply the independent source standard as stated in *Commonwealth* v. *Botelho*, 369 Mass. at 865-869 (and see cases cited), "since that standard is at least as strict as the *Biggers-Brathwaite*[9] standard [of reliability]." *Commonwealth* v. *Venios*, 378 Mass. 24, 30 (1979).[10] See *Commonwealth* v. *Correia*, 381 Mass. 65, 81 (1980). In accordance with the independent source standard we review the following factors:

(a) *The extent of the witness' opportunity to observe the defendant at the time of the crimes.* Although the defendant was wearing a ski mask with the eye and mouth openings cut out, the motion judge found that the three robberies which occurred when O'Neil was present happened in a well-lighted restaurant, that the quickest of these robberies took from four to five minutes, that the longest took at least eight to nine minutes, that O'Neil looked at the defendant for most of the time when he was present, and that often she saw the defendant from a distance of as little as two feet. See *Commonwealth* v. *Correia, supra* at 72, 74, 81 (inde-

---

[8] The defendant and the Commonwealth stipulated that the unavailability of the transcript was not due to the lack of appropriate requests by the defendant.

[9] *Neil* v. *Biggers*, 409 U.S. 188 (1972), and *Manson* v. *Brathwaite*, 432 U.S. 98 (1977).

[10] Perhaps following the suggestion in *Commonwealth* v. *Venios*, at 28, the judge stated that he used both the independent source and the reliability tests in reaching his conclusion.

pendent source standard satisfied where witnesses saw defendant for only a few seconds).

(b) *Prior errors in description.*  There was no finding indicating that O'Neil had made any errors in her description.

(c) *Prior errors in identifying another.*  At no time did O'Neil identify anyone other than the defendant.

(d) *Prior errors in failing to identify the defendant.*  At no time did O'Neil fail to identify the defendant.

(e) *The receipt of other suggestions.*  The findings do not show that O'Neil's corporeal identifications were the result of outside suggestions, or that any subsequent identifications at trial would be so.

(f) *The lapse of time between the crime and the corporeal identifications.*  Approximately four months elapsed between the time of the last robbery at which O'Neil was present and the corporeal identifications at the probable cause hearing.  Seven months elapsed between the probable cause hearing and the suppression hearing.  In view of the preceding factors, these lengths of time do not cast any significant doubt on O'Neil's ability to identify the defendant.  See *Commonwealth* v. *Walker,* 370 Mass. 548, 563-565, cert. denied, 429 U.S. 943 (1976) (lapse of eight months); *Commonwealth* v. *Correia, supra* at 66, 69 (lapse of nearly sixteen months).

(g) *Other factors.*  The motion judge found that O'Neil "identified [the defendant] with great purpose at the hearing" and that "she observed and reported all that occurred during the robberies."  He found that the defendant fit the descriptions given by O'Neil, and that the defendant "had unique brown appearing eyes."

The judge obviously thought that the evidence was clear and convincing that the corporeal identifications by O'Neil were and would be from a source, her memory of her observations of the defendant during the commission of the crimes, independent of the suppressed photographic identification, and we agree.  See *Commonwealth* v. *Ross,* 361 Mass. 665, 671-672 (1972).  Any weaknesses in these identifications were for the consideration of the jury.  *Common-*

*wealth* v. *Jones,* 9 Mass. App. Ct. 83, 92-93 (1980), and cases cited.

2. *Trial issues.* The other errors claimed by the defendant may be dealt with under the rule that an appellate court will not review alleged errors not brought to the attention of the trial court unless there is a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Redding,* 382 Mass. 154, 155 (1980); *Commonwealth* v. *Levia,* 385 Mass. 345, 354-355 (1982); *Commonwealth* v. *Fullerton,* 12 Mass. App. Ct. 985, 985-986 (1981); Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979). "Our view is the same notwithstanding the fact that the defendant is being represented on these appeals by counsel other than the one who represented him at the original trial." *Commonwealth* v. *Johnson,* 374 Mass. 453, 465 (1978). *Commonwealth* v. *Ely,* 388 Mass. 69, 73 (1983).

(a) The defendant's claim that he was not allowed adequately to cross-examine O'Neil is not supported by the trial transcript, which reveals no objection by trial counsel to whatever the judge may have said at an unrecorded bench conference. A barren record does not create a presumption of prejudice in the defendant's favor. *Commonwealth* v. *Festa,* 369 Mass. 419, 428 (1976).

(b) The defendant argues that he could not have been convicted of armed robbery because he did not arm himself with a knife until after he took the money on September 16, 1980. On this issue the jury could have found beyond a reasonable doubt that the defendant on that date demanded money from O'Neil and Vernile, that he had them place the money from the cash register in a clear plastic bag, and that, after he put the bag containing the money in his jacket pocket, he picked up a ten-inch butcher knife that O'Neil had placed on the counter next to the cash register. Holding the knife he ordered Vernile to pick up a telephone and while she held it he cut the telephone cord. He poured a solution from a small vial over another telephone and said that the women would pass out if they tried to use it. Walk-

ing towards them while holding the knife, he backed O'Neil and Vernile into the back of the restaurant and ordered them into an office, took Vernile's keys, told them to count to fifty, and left by the rear door.

The defendant did not object to any of the instructions given to the jury (indeed, at the conclusion of the judge's charge, the defendant's counsel, when asked by the judge to comment, replied, "I have nothing, your Honor. Very satisfied"). In his brief on appeal, the defendant concedes the propriety of the judge's charge. There was no motion for a required finding of not guilty. "The crime of armed robbery, an aggravated form of robbery, is based in part on the potential for injury that arises from the possession of a dangerous weapon." *Commonwealth* v. *Howard*, 386 Mass. 607, 611 (1982). That potential for injury does not depend on the precise moment at which the defendant becomes armed, as long as he becomes armed at a point directly related to the commission and completion of the robbery.[11] See *People* v. *Wallace*, 36 Cal. App. 2d 1, 4 (1939); *People* v. *Rostamo*, 249 Cal. App. 2d 983, 986-987 (1967); *People* v. *Heller*, 131 Ill. App. 2d 799, 803 (1971); 4 Torcia, Wharton's Criminal Law § 478, at 63-65 (14th ed. 1981); 77 C.J.S., Robbery § 25, at 465 (1952). Compare 77 C.J.S., Robbery §§ 11 & 13 (1952). Cf. *Commonwealth* v. *Novicki*, 324 Mass. 461, 465 (1949); *Commonwealth* v. *Howard, supra* at 611; *People* v. *Simmons*, 34 Ill. App. 3d 970, 971-972 (1975). The evidence that the defendant used the butcher knife, which he took from the counter, to cut the telephone wires and to back Vernile and O'Neil into a back room was sufficient to enable the jury to find beyond a reasonable doubt that he committed armed robbery.

(c) Finally, the defendant complains because two witnesses, George Bouchicas and Lisa Foster, were permitted to testify at the trial. Bouchicas testified that he had known the defendant for several years, and that on October 3, 1980,

---

[11] The defendant does not contend that the incident did not constitute a robbery. Cf. *Commonwealth* v. *Novicki*, 324 Mass. 461, 465 (1949).

while he was driving with Foster, he picked up the defendant, who was hitchhiking. Both Bouchicas and Foster testified that Bouchicas mentioned the Pizza Hut robberies, that the defendant said that a "crazy cop pulled a gun to my head," and that he then "ran fast." The defendant now claims that Bouchicas and Foster should not have been permitted to testify at the trial, because their previous testimony to the same effect at the probable cause hearing had been given only after the District Court judge had found them in contempt of court when they denied giving signed statements to the police. The defendant claims that the coercive effect of the judge's contempt finding at the probable cause hearing, which resulted in Bouchicas' spending three days in jail, forced him to testify as he did at the trial.

Trial counsel made no motion to prevent Bouchicas and Foster from testifying and made no motion to strike their testimony. The record before us of the probable cause hearing consists of one page of the transcript of that hearing, which gives us no basis for finding that whatever occurred there had a coercive effect on the trial testimony of Bouchicas and Foster, given over seven months after the hearing. Further, defense counsel on cross-examination at the trial fully explored the events at the probable cause hearing in an effort to impeach both witnesses.

We conclude that there is no substantial risk of a miscarriage of justice.

3. *Sentencing.* We, on our own motion, consider the sentence of five to seven years for the conviction of attempted robbery. General Laws c. 274, § 6, as appearing in St. 1924, c. 164, provides for a maximum sentence of five years for this offense. Although the record fails to reveal whether the sentence for attempted robbery was to run consecutively or concurrently with the other sentences, the Commonwealth concedes that the sentence was concurrent, and we would remand in either situation for resentencing. See *Commonwealth* v. *Burkett*, 3 Mass. App. Ct. 744, 745 (1975) (where this court remanded for resentencing when there were three concurrent sentences of equal length, two

of which exceeded the statutory maximum). Upon resentencing the judge shall take into consideration any deductions for time earned (*ibid.*) and shall impose a concurrent sentence within the statutory limit.

We vacate the sentence on the attempted robbery indictment and remand the case for resentencing consistent with this opinion. The judgments on the indictments for armed robbery while masked and for robbery are affirmed.

*So ordered.*