**STATE**

v.

**Byron BARBER.**

No. 87–41–C.A.

Supreme Court of Rhode Island.

March 23, 1988.

Barbara Hurst, Paula Rosin, Asst. Public Defenders, for plaintiff.

James E. O'Neil, Atty. Gen., Thomas Dickinson, Jane McSoley, Asst. Atty. Gen., for defendant.

OPINION

KELLEHER, Justice.

This appeal by the defendant, Byron Barber (Barber), marks the second time he has

been before us because of an incident that occurred in downtown Providence in July 1981. In *State v. Barber*, 468 A.2d 277 (R.I. 1983), we sustained Barber's appeal after a Superior Court jury had returned guilty verdicts against Barber relating to charges of first-degree sexual assault and kidnapping, but acquitted him of a third charge alleging that he had committed an "abominable and detestable crime against nature." The convictions were vacated because the physician who was testifying about the forcible nature of the assault also repeated the victim's version of the sexual assault. In *Barber* I we pointed out that the trial judge erred in permitting a physician to testify concerning portions of a case history that were neither necessary nor helpful in the diagnosis or treatment of the condition for which the physician had been consulted. We have expressed similar sentiments in *State v. Burgess*, 465 A.2d 204 (R.I. 1983); *State v. Pina*, 455 A.2d 313 (R.I. 1983); and *State v. Contreras*, 105 R.I. 523, 253 A.2d 612 (1969). We see no necessity for describing at length the testimony presented at the retrial.

On July 10, 1981, the complainant, a sixteen-year-old girl (hereafter identified as Beth), was wandering through downtown Providence when she was approached by a man who was not known to her but whom she later identified as Barber. She accepted Barber's invitation to have something to eat and subsequently accompanied him to his apartment where they smoked some "joints." When Beth sought to leave, Barber refused to allow her to do so. He then forced her to engage in sexual intercourse and perform fellatio upon him. According to Beth, she was kept a prisoner in Barber's apartment for approximately twenty-four hours. During this period Barber repeatedly engaged in sexual activities with Beth and from time to time struck her about the face. Barber left the apartment on three different occasions. On one occasion he hid her clothing, but on the two subsequent occasions Barber tied her hands and chained her feet to a radiator and bed and blindfolded her. At approximately 9 p.m. on July 11, 1981, Barber permitted Beth to leave the apartment.

Beth returned to her East Providence home. Beth's parents then took her to Rhode Island Hospital where she was examined by the physician who testified at both trials.

The testimony at the 1986 trial was almost identical to that given in 1981. At the retrial the trial justice granted Barber's motion for a judgment of acquittal on the kidnapping charge. The jury then returned a guilty verdict on the charge alleging first-degree sexual assault. Barber is now before us on a three-pronged challenge to actions taken by the trial justice including his (1) refusal to pass the case because of alleged unconstitutional actions taken by the state's prosecutor in exercising his peremptory challenges during the jury-selection process, (2) allowance of testimony about the oral sex episodes even though the abominable and detestable charge had been dismissed at the first trial, and (3) rejection of Barber's motion alleging an infringement of his right to a speedy trial based on the provisions of Rule 48(b) of the Superior Court Rules of Criminal Procedure.

During the jury-selection process the state exercised one of its peremptory challenges, and as a result Herman C. Pittman was excused from further participation in the proceeding. After the clerk made this announcement, defense counsel moved to pass the case, observing that "[i]t is quite apparent Mr. Pittman is of the same race and color as the [d]efendant and by a peremptory challenging the only [b]lack prospective member of the panel, Mr. Monti has deprived Mr. Barber of a cross section of the community." To this accusation the prosecutor responded, "Mr. Pittman is an older gentleman, retired, just as the other juror that * * * had been peremptorily challenged by the [s]tate, who had been retired, who was not [b]lack, who was white." Counsel for Barber informed the trial justice "I think there is a case on this somewhere, but I can't put my finger on it right now." The trial justice stated "[t]here may be some cases on it, but I am satisfied the [s]tate should not be limited in its peremptory challenges. Merely because

the man is [b]lack doesn't mean there's anything wrong with challenging him. * * * I see nothing wrong with the [s]tate challenging him because he is [b]lack. It doesn't mean the [s]tate has to accept him as a juror. I accept the [p]rosecutor's statement because he is challenging him because he is old and retired and it is not the kind of juror he wants on this case. So your motion to pass is denied."

The case that escaped defense counsel's finger is *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), where the Supreme Court ruled that once a defendant makes a prima facie showing of purposeful discrimination in the selection of the petit jury, the prosecution then assumes the burden of articulating a clear and reasonably specific neutral explanation for removing a juror whose race is the same as the defendant's. In discussing the defense's burden of production, the Supreme Court observed that in the usual criminal case, a defendant who relies on the *Batson* case

> "must show that he is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination." 476 U.S. at 96, 106 S.Ct. at 1723, 90 L.Ed.2d at 87–88.

The prosecutor explained his removal of Mr. Pittman on the grounds of his age and his retirement status. Earlier in the jury-selection process, the prosecution had exercised one of its peremptory challenges by challenging an elderly retired female for the very same reasons. Barber's appellate counsel faults the trial justice's acceptance of the prosecutor's rationale by pointing out that there was another retired individual who was not subject to challenge by the prosecutor. However, the record is clear that the third retiree had an employment and experience record that might have caused the prosecutor to reassess his blanket objection to retirees being on the panel. The potential juror had been involved to some extent in law enforcement activities when he was employed as a security guard in a bank building and, in addition, he had the misfortune of being a holdup victim three times while managing a liquor store. It should be noted that defense counsel exercised a peremptory challenge and excluded the security guard from further participation in the case.

■ Here the Superior Court justice accepted the prosecutor's explanation, and his conclusion is a permissible finding on this record. In essence the defendant has failed to establish a purposeful discrimination. As stated by the Supreme Court in *Batson*, the government's "explanation need not rise to the level justifying exercise of a challenge for cause." 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The trial justice's determination that the prosecutor's actions were motivated by Mr. Pittman's age is to be given great deference by us, and we are unwilling to disturb that determination here.

■ Again the trial justice at Barber's second trial was well aware of the dismissal of the "abominable and detestable" charge against Barber at the first trial. However, he was of the belief that the forced oral-sex episodes in which Barber allegedly inserted his penis into Beth's mouth could be punishable as a first-degree sexual assault as that term is defined in the statute. Consequently he did not adhere to the principles laid down in *State v. Bernier*, 491 A.2d 1000 (R.I. 1985), where this court ruled that collateral estoppel does not bar the use of evidence in which a defendant may have been tried and acquitted if the evidence is competent and other-

wise admissible. This court also observed that when such evidence is introduced, the defendant is allowed to introduce evidence of the acquittal so that the prosecution's proof of other crimes might be weakened or rebutted.

Exclusion of evidence of an acquittal, we said in *Bernier*, is a violation of the defendant's due process rights. However, on the record before us we see no such violation because the trial justice demonstrated an unusual and ingenious concern for Barber's due process rights. After the jury had returned its guilty verdict in regard to the first-degree sexual assault charge lodged against Barber, the trial justice submitted two interrogatories to the jury. One question asked if the guilty verdict was based upon the "sexual penetration of the vagina" and the other inquiry related to the penetration of the victim's "oral cavity." The jury again retired to the jury room, and when it returned with the form, the response was affirmative to the "sexual penetration of the vagina" inquiry and negative to the question about an "oral cavity penetration." It is obvious from the approach that he took that the trial justice anticipated a due process argument, and we are of the opinion that the responses given by the jury clearly indicate no such violation.

The final facet of Barber's appeal concerns the denial of his motion that the indictment should be dismissed pursuant to the provisions of Rule 48(b). Barber's Rule 48(b) motion was filed sometime prior to this court's November 21, 1984 affirmation of the repeal of the rule by the Superior Court justices. Subsequently, in *State v. Borges*, 519 A.2d 574 (R.I. 1986), we rejected a constitutional challenge to the repeal on the basis of the ex post facto guarantee. Later in *State v. Nordstrom*, 529 A.2d 107 (R.I. 1987), we ruled that a dismissal under Rule 48(b) was not an available remedy when the repeal of the rule preceded a hearing on the motion to dismiss. What was said about Nordstrom applies equally to Barber.

The defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the case is remanded to the Superior Court.