STATE

v.

Scott CAMIRAND.

No. 88–559–C.A.

Supreme Court of Rhode Island.

April 10, 1990.

James E. O'Neil, Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Paula Rosin, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

This matter is before the Supreme Court on appeal by the defendant, Scott Camirand, from his conviction in Providence County Superior Court for robbery and assault with a dangerous weapon. We affirm the judgment of the Superior Court.

On the night of August 28, 1984, an armed robbery occurred in a bar called Club Paradise in Lincoln, Rhode Island. The bar had been owned for thirty years by two brothers, John and Tony Carvalho. John Carvalho was working that night.

Mary Lunderville, a regular patron, testified that she came into the bar at around 10:45 that evening. Another patron was in the bar at that time whom Carvalho had seen "more than once." Carvalho testified at trial that although he did not know the patron's surname, he "knew that he was called Scott." The patron kept going back and forth to the door. The patron also said that there was a car in front with a flat tire, which John Carvalho knew to be Mary Lunderville's automobile. Carvalho informed Lunderville of the man's observation, but she took no action. When Carvalho went outside and checked the car, he found that the tires were fine.

John Carvalho testified that the patron sat down awhile, then stood up suddenly and took out a gun. He told Carvalho to empty his cash registers. Carvalho then asked the man in disbelief "[A]re you serious?" Carvalho explained this comment at

trial by stating that he would not have made the comment if he had not seen this individual before. Carvalho proceeded to empty both cash registers, at which point the man asked Carvalho to get Lunderville's car keys. When Carvalho asked Lunderville to come over, however, she refused. Carvalho told Lunderville that the man had a gun, Lunderville expressed disbelief, and the man shot at the display case behind the bar.

Lunderville approached the robber, who grabbed her by the arm and pulled her into the telephone booth, where he shot at and ripped out the cord. The man then told Lunderville to go outside and drive her car to the front door. The robber threatened to kill Carvalho if Lunderville did not follow his instructions. When Lunderville drove up to the door, the robber first ordered her to drive down and then up the street and next told her to turn the car around and go the other way. When she had driven a short distance further, the man told her to open the door and get out. Lunderville hesitated because she was afraid to jump from the car when it was moving. She then slowed the car down and got out three blocks from the bar.

John Carvalho described the robber to the police as a white male, five foot nine to five foot ten inches tall, clean shaven, forty to fifty years old, straight hair combed back, neat looking, wearing a black shirt and canvas vest. Mary Lunderville described the robber as a Hispanic male, five foot ten inches tall, clean shaven, straight dark brown hair hanging down to his shoulder, with pock marks on his face between thirty-five and forty years old, wearing a blue-jean jacket and dark pants.

After giving statements to the police, Carvalho telephoned police headquarters at 5:30 a.m. With further information that the wife or girlfriend of the man who robbed the bar was the sister of a customer of the bar named Jack, whose brother-in-law Tom, reportedly worked in maintenance for the Pawtucket Public Library. A third person who might have information, known to Carvalho only as Charlie was said to work at a Pawtucket gas station on the corner of Weeden Street and Reservoir Avenue.

The Lincoln police in turn found Charlie at the gas station in Pawtucket and asked him if he knew anyone by the name of Jack or Tom. Charlie indicated that he knew a Tom who worked for the Pawtucket Public Library.

"Tom" was determined to be Thomas Pereira. He informed the police that "Jack" was a former coworker, Jack Morgan. Apparently Pereira and Morgan had a practice of going to the Club Paradise together for a few beers after work. Jack had a sister, Sharon Oldfield, who had a boyfriend or husband named Scott who would occasionally accompany her or meet her at the bar.

Jack Morgan confirmed that his sister's boyfriend, whom Morgan knew only as Scott, might have been in the Club Paradise with him and Pereira at one time or another. Morgan also gave the police a current address of his sister, Sharon Oldfield. When the police interviewed Oldfield she established that Scott's last name was Camirand. Oldfield indicated that she and defendant had once lived together. She gave the officers his current address and told the officers he was known to carry a gun. When she was asked how Camirand looked presently, she said he was clean shaven. Oldfield also supplied the police officers with photographs of defendant.

The police then attempted to confirm that defendant was the man Carvalho had identified as the robber through the use of a showup identification procedure. Carvalho was shown a single dimly lit photograph approximately three inches square of a man and a woman standing beside a car. The police also told Carvalho that the man in the photograph might be the robber. Carvalho did not recognize defendant in this photograph.[1] Tony Carvalho, the victim's brother, also viewed this photograph

---

1. It is not clear from the record the exact number of photographs Carvalho was shown of defendant at that time.

and stated that the man in the photograph had been in the bar before the night of the robbery.

The police then obtained a photograph of defendant in full beard from the Cumberland police for the purposes of constructing the first array of photographs. This array was shown separately and both Carvalho and Lunderville identified the photograph of Camirand as depicting the robber.

On the basis of this identification Scott Camirand was arrested on September 6, 1984. At the time of arrest defendant was thirty years old five foot four inches tall, 140 pounds with a beard and mustache. The defendant did not have a pock marked face. On the day following his arrest, the police held a lineup in which defendant was a participant. The lineup included one police officer, and four town employees. Carvalho viewed the lineup but, according to police, could not positively identify defendant as the robber.

Later in September police constructed a second photo array that included a photo of defendant taken when he was arrested. This array was shown to Carvalho and Lunderville. Both Carvalho and Lunderville selected defendant's photograph.

■ On appeal defendant argues that the trial justice committed reversible error when he denied his motion to suppress John Carvalho's and Mary Lunderville's out-of-court and in-court identifications of defendant. Specifically defendant asserts that the showup display, the first and second photo arrays and the lineup were unnecessarily suggestive and the resulting identifications unreliable. When determining whether identification procedures employed violated a defendant's right to due process of law the court must employ a two-step procedure. First the court must consider the question of whether the procedures used in the identification were unnecessarily suggestive. If any of the procedures are found to have been suggestive, in the second step there must be a determination of whether the identification lacks independent reliability despite the suggestive nature of the identification procedure.

*State v. Nicoletti*, 471 A.2d 613, 615 (R.I. 1984).

■ The defendant's first contention is that the showup display in which the police showed Carvalho a single photograph was unduly suggestive. The defendant asserts that by showing Carvalho this single photograph, and identifying the man in the photograph as the robber, the police improperly influenced Carvalho's later identification.

We are of the opinion, however, that although this identification procedure was flawed, it did not taint Carvalho's subsequent identifications. A review of the record indicates that the photograph shown to Carvalho was a small, poor-quality snapshot of defendant and a woman standing in front of an automobile. The faces in the photograph were quite small. The trial justice noted that only a person of long acquaintance with the person shown could have made an identification based on this photograph. Under these circumstances the trial justice properly concluded that Carvalho's viewing of this photograph did not serve as the basis of his later identification of defendant.

■ The defendant next argues the lineup procedure viewed by Carvalho was unduly suggestive. The defendant notes that the lineup consisted of himself, a Lincoln police officer, and four town employees. The defendant claims that as a member of the Lincoln Fraternal Order of Police and a businessman in Lincoln for approximately thirty years Carvalho may have been familiar with the other members of the lineup. Additionally defendant was the only person in the lineup who had both a beard and a mustache. Finally defendant notes that unlike the other participants in the lineup, he had spent the night in jail and had slept in his clothes.

The trial justice denied defendant's motion to suppress the lineup, reasoning that it was fairly constituted. The court found that any differences in the dress and the height of the participants were insignificant. Moreover John Carvalho testified that he did not recognize anyone in the lineup. On the issue of the beard the court noted that even though the other partici-

pants only had mustaches, defendant's facial hair did not unerringly draw the attention of the observer to him.

We affirm the finding of the trial justice that the lineup was not unduly suggestive. The men included in the lineup were all similar in appearance. In addition the fact that defendant had a small beard is not in this case sufficient to render the lineup unduly suggestive.

■ The defendant next challenges the two photo arrays, asserting that both Carvalho's and Mary Lunderville's identifications were based not on their respective memories of the robbery, but on repetition of defendant's photograph. Relying on *State v. Nicoletti*, defendant argues that the repetition of defendant's photograph was unduly suggestive and that the identifications should have been suppressed because they lacked independent reliability.

■ Although the repetition of only defendant's photograph in successive photo arrays may have been suggestive, we believe that the trial justice properly applied the reliability analysis set forth in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered when determining if an identification is independently reliable include the opportunity of the witness to view the criminal, the witness's degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. *Id.* at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

In the case at hand the trial justice found that both Lunderville and Carvalho had ample opportunity to observe the robber both before and during the robbery. In addition the trial justice concluded that both witnesses paid close attention to the robber during the course of the crime. Furthermore, the trial justice concluded, that the passage of time between the initial identification and the crime was not long enough to be considered a significant factor weighing against reliability of the identification. The trial justice did conclude that although both witnesses gave inaccurate descriptions of defendant and

Carvalho's identifications were at times somewhat uncertain, on balance the identifications were reliable. After our review of the record we are of the opinion that the trial justice properly weighed these factors and correctly declined to suppress the out-of-court and in-court identifications of Carvalho and Lunderville.

■ The defendant also complains of error in the refusal of the trial justice to declare a mistrial when a Lincoln police officer made reference to photographs of defendant held by another police department. On direct examination concerning the source of photographs used in a photo array, the following occurred:

"Q. After that did you do anything further?

"A. I checked with the Pawtucket Police and also the Cumberland police to see if they had a recent picture of Mr. Camirand.

"Q. Did they?

"A. The Cumberland police did."

At that point defense counsel objected and moved at side bar to pass the case on the grounds that the jury could infer from that statement that defendant had a prior criminal record. The trial justice rejected defendant's motion on the basis that the prejudice had not risen to the level that a mistrial was appropriate. The trial justice then immediately stated: "Ladies and gentlemen, you will disregard this officer's testimony about his going to any other police departments." After a recess the trial justice again instructed the jury to disregard the officer's comment.

■ The defendant did not object to this cautionary instruction, and as such it would appear the issue was not preserved for appeal. *State v. Burke*, 529 A.2d 621, 627 (R.I.1987). Moreover, even if the issue had been properly preserved, this court will not disturb decisions on motions to pass unless the action taken was clearly wrong. *State v. Agin*, 535 A.2d 321, 324 (R.I.1988). In the case before us we are of the opinion that the cautionary instruction was sufficient, and consequently we shall not disturb the trial justice's decision.

Finally defendant asserts that the trial justice erred when he refused to grant defendant's motion in limine to preclude evidence of a prior conviction on the grounds of remoteness. Apparently defendant was convicted in 1976 of breaking and entering for which he received a three year suspended sentence and three years probation. Under Rule 609(b) of the Rhode Island Rules of Evidence the trial justice is required to determine whether the probative value of allowing prior convictions to be used to impeach credibility outweighs the prejudicial effect. After weighing both the probative and prejudicial effects of allowing defendant to be impeached with this conviction, the trial justice denied defendant's motion, and ruled that evidence of that conviction could be presented if defendant testified.

This court has recognized that decisions regarding the admissibility of prior convictions for impeachment purposes is a discretionary matter for the trial justice to decide. *State v. Maxie*, 554 A.2d 1028, 1031 (R.I.1989). The record before us does not indicate an abuse of discretion. Therefore, the trial justice's ruling in this instance will not be disturbed.

For the reasons stated, the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.