**STATE**

v.

**Julio HOLLEY.**

**No. 90–557–C.A.**

Supreme Court of Rhode Island.

March 3, 1992.

James E. O'Neil, Atty. Gen., Aaron Weisman, Sp. Asst. Atty. Gen., Jeffrey Greer, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Catherine Gibran, Barbara Hurst, Asst. Public Defenders, for defendant.

## OPINION

KELLEHER, Justice.

The defendant, Julio Holley (Holley), appeals his conviction by a Superior Court jury in which he was found guilty of robbery and conspiracy to commit robbery. Subsequently the trial justice imposed a sentence of forty-five years. For reasons set forth herein, we modify Holley's conviction and remand the case to the Superior Court for the entry of a judgment of conviction of assault with the intent to rob.

For forty-three years Melkon Varadian (Varadian) and his wife owned and operated, six days a week, the Public Street Market, a neighborhood grocery store in Providence. Varadian testified that on the morning of February 6, 1987, two men entered his store. One man, whom Varadian immediately recognized as a previous customer, wore a blue jumpsuit and a blue hat with gold braid. The other man, whom Varadian did not recognize, was of shorter stature. The familiar, taller man, later identified as Zachary Spratt (Spratt),[1] meandered his way about the market, approached the meat counter and began to recite a list of various meats Varadian was to fetch for him. Meanwhile Holley paced between the meat counter and another aisle, a distance of approximately three feet. Although Varadian commented that the price of hamburger was too high, Spratt insisted on ordering three pounds of the meat. Spratt next requested pork chops and began again to stroll about the store. While Varadian prepared the chops, he carefully eyed the wandering taller man and testified later that Spratt put two cans of tuna fish into his jacket pocket. Spratt returned to the counter and ordered two slices of cheese and followed this request with another, for two slices of bologna. Varadian testified that at this point he knew he was "in trouble." Finally Spratt asked for some hot sausage, then changed his mind and canceled that portion of the order.

Frustrated with this tedious exchange, Varadian rang up the two men's purchases, which totaled $16, whereupon Spratt complained of the high price and began removing certain packages of meat from the grocery sack. Varadian explained that he had simply prepared the foods Spratt himself had ordered, then asked him to take the two cans of tuna fish out of his pocket and "to get the hell out" of his store.

At that moment Spratt nodded to Holley, who also was standing at the counter. Responding to the signal, Holley moved towards Varadian and pushed a gun into the proprietor's belly. Varadian reacted by swinging at Holley's chin. Holley hit Varadian back, dragged the sixty-five-year-old proprietor fifteen feet up an aisle of the store, threw Varadian to the floor, and began beating him across the face with the barrel of his gun.

In the meantime Spratt was attempting to open the cash register and succeeded only in breaking the top of the machine and its keys. No cash was taken. Varadian broke free of Holley and scrambled for a telephone to notify the police. Despite their efforts Spratt and Holley fled with no money, nor did they take away any of the food ordered, save the two tins of tuna.

Providence police responding to Varadian's call conducted a showup of possible suspects, but Varadian recognized none of the individuals presented to him as the perpetrators. Varadian was treated at St. Joseph Hospital and later released but not before detectives conducted another showup that included a man named Zachary Spratt, whom Providence detectives had apprehended earlier that afternoon in posses-

---

**1.** Following his indictment Zachary Spratt pled *nolo contendere* to the charges of robbery and conspiracy to commit robbery and was sentenced to twenty-five years.

sion of a gun and in the process of taking off a blue jumpsuit. Varadian instantly recognized him as the taller perpetrator. Later that same day Varadian reported to the Providence police station to examine a six-photo array that contained a black-and-white photograph of Holley taken three years prior to the crime. Varadian did not recognize any of the men depicted in the photographs as the shorter man in his store earlier that day. However, one month following the incident, on March 6, 1987, in his store, Varadian was shown another and different six-photo array that contained a color photograph of Holley taken approximately two days before. At this time Varadian immediately identified the photograph of Holley as depicting the individual who had robbed him, and he gave a statement verifying this identification three days later at the police station.

Holley raises many issues on appeal, two of which relate directly to the facts reiterated above and three of which relate to procedural matters concerning his trial. Specifically Holley contends that the trial justice erred in (1) denying Holley's motion for acquittal on the charge of robbery, (2) failing to suppress Varadian's in- and out-of-court identifications of Holley, (3) improperly allowing the state to use its peremptory-challenge power to remove from the jury the only black juror at Holley's trial, (4) denying Holley's motion to pass the case, and (5) failing to permit defense counsel to question the reason for a fourteen-month lapse of time between Holley's identification and his charging. We modify Holley's judgment on the robbery conviction and reject the remainder of his contentions.

■ The facts of this case have provided us with much food for thought. In his first issue on appeal Holley insists he is wrongly sentenced to forty-five years for his cohort's taking of two cans of tuna fish. Specifically Holley contends that the tuna fish, having been put into Spratt's pocket prior to any exercise of force, makes unsupportable Holley's robbery conviction. We agree.

As Rhode Island subscribes to the common-law definition of robbery, we define the crime as the "felonious and forcible taking from the person of another of goods or money to any value by violence or putting him in fear." *State v. Pope,* 414 A.2d 781, 788 (R.I.1980) (quoting *State v. Reposa,* 99 R.I. 147, 149, 206 A.2d 213, 215 (1965), *citing* 4 Black. Comm. 241). Larceny at common law is essentially a wrongful taking without right and a carrying away of another's personal property with a felonious intent to steal. *State v. Smith,* 56 R.I. 168, 184 A. 494 (1936). By definition, robbery includes larceny because the robbery act requires a taking and a carrying away of another's property. 67 Am. Jur.2d *Robbery* §§ 1, 2 (1985). When a defendant takes possession of another's property, there is a taking; when a defendant exercises dominion and control over the property, there is possession. Finally when a defendant carries away the property, there is an asportation. We note that there cannot be an asportation unless there has first been a taking. 4 *Wharton's Criminal Law* § 472 (Torcia 14th ed.1981).

We observe that it is the element of force, violence, or intimidation in the taking of property that distinguishes robbery from larceny. Annot. 58 A.L.R. 656 (1929). Indeed, a seining of case law regarding what constitutes robbery indicates a clear division between force used preceding or contemporaneous with a taking of property and force used subsequent to a taking. The majority of common-law jurisdictions support the conclusion that force used to retain property already peacefully taken, or to attempt to escape, is not the force essential to satisfy the element of force required for robbery. *See, e.g., Eckelberry v. State,* 497 N.E.2d 233 (Ind.1986); *State v. Long,* 234 Kan. 580, 675 P.2d 832 (1984); *State v. Hope,* 77 N.C.App. 338, 335 S.E.2d 218 (1985), *rev'd,* 317 N.C. 302, 345 S.E.2d 361 (1986). *See* Annot. 93 A.L.R.3d 643, 647 (1979). By the same token, a robbery has been held to occur when a defendant uses force or fear in resisting an attempt to regain the property or in attempting to remove property from the owner's immediate presence. *See Burko v.*

*State,* 19 Md.App. 645, 313 A.2d 864 (1974), *reversing, Gray v. State,* 10 Md.App. 478, 271 A.2d 390 (1970).[2]

In order to ascertain whether a robbery conviction is proper, then, we need first to determine whether the taking of property had been completed at the time the force was used by a defendant. The relevant facts indicate that Holley and Spratt had finished their taking of the tuna before Holley bludgeoned Varadian. The force Holley applied to Varadian was not aimed at the taking of the tuna, which was concealed peacefully, albeit wrongly, in Spratt's jacket. Instead the facts show, and the state argued, that the force Holley dealt upon the store owner was directed toward the moneys in the cash register, which Spratt unsuccessfully attempted to open. Consequently, as the requisite elements of common-law robbery are unsustainable, we must vacate the robbery conviction.

■ We are persuaded that a modification of the judgment of conviction to assault with the intent to rob, and not a judgment of acquittal, is proper in this instance. Although it was legally impossible to sustain a conviction of robbery, there is ample evidence to support a conviction of the lesser included offense of assault with intent to rob, an offense about which the jury was alternatively instructed should the robbery charge be found unsupportable.

■ Our modification compels a brief explanation. Although originally a prosecutorial tool, lesser-included-offense instructions serve a significant function in protecting the rights of the accused as well as the integrity of the judicial system. *Beck v. Alabama,* 447 U.S. 625, 633–34, 100 S.Ct. 2382, 2387–88, 65 L.Ed.2d 392, 400–01 (1980). Such instructions may allow a jury to bring the verdict more accurately into conformity with the evidence and consequently ensure a defendant the full protection of the reasonable-doubt standard. *State v. Myers,* 158 Wis.2d 356, 363, 461 N.W.2d 777, 780 (1990). Indeed, instructing the jury on lesser included offenses developed at common law has aided the prosecution "in cases in which the proof failed to establish some element of the crime charged." *Beck v. Alabama,* 447 U.S. at 633, 100 S.Ct. at 2387, 65 L.Ed.2d at 400. Thus the common law empowered the state to exercise its discretion to charge the greater offense yet preserve its ability to seek a conviction of the lesser included offense when, at trial, its proof of the greater offense proved nonexistent or weak. *Id. See also Morris v. Mathews,* 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986) (affirming an appellate court's power to reduce the conviction of aggravated murder to the lesser included offense of murder).

In a case of first impression the Wisconsin Supreme Court held that its Court of Appeals was unable to direct a lower court to enter judgment of conviction of a lesser included offense when the jury verdict of guilty of a greater offense was reversed

---

**2.** A substantial minority of authority exists to support the conclusion that force or intimidation used to retain property nevertheless constitutes the force or intimidation necessary to support a robbery offense. *See Winborne v. State,* 455 A.2d 357 (Del.1982); *Cantrell v. State,* 184 Ga.App. 384, 361 S.E.2d 689 (1987); *Commonwealth v. Boiselle,* 16 Mass.App. 393, 451 N.E.2d 1178 (1983). In the same vein other cases have held that the use of force merely to escape does not supply the element of force needed for robbery. *See Becker v. State,* 298 Ark. 438, 768 S.W.2d 527 (1989); *State v. Hope,* 317 N.C. 302, 345 S.E.2d 361 (1986).

The reasoning for this line of demarcation in case law, however, is unclear because of the uncertainty regarding when a taking is completed. Annot. 93 A.L.R.3d 643, 645 (1979); An-

not. 58 A.L.R. 656, 662 (1929). Whether a particular offense is properly characterized as larceny, robbery, or a related charge is contingent upon the timing at which force is exerted. We note that some states, in predicating robbery upon the use of force to retain possession of the property or to facilitate escape, effectively extend the common-law view by lengthening the thief's "taking" period. This statutory extension is "not necessarily inconsistent with the common-law theory of robbery." 4 *Wharton's Criminal Law* § 478 at 65 (Torcia 14th ed.1981). Indeed, it is a view with which we conceptually agree. However, Holley may not be punished under a retroactive application of a modification in the law. U.S. Const. Art. I, § 10, cl. 1; *see also State v. Brown,* 486 A.2d 595, 599 (R.I. 1985).

because of insufficient evidence and a failure to instruct the jury on the lesser included offense of attempted aggravated battery. *State v. Myers,* 158 Wis.2d at 358, 461 N.W.2d at 778. The court reasoned that the lack of jury instructions on a lesser included offense not only amplified the risk of an unwarranted conviction but also eroded the reliability of a jury's guilty verdict. *Id.* at 365, 461 N.W.2d at 781. The conviction of the greater offense was reversed on grounds of insufficient evidence, rendering a subsequent recasting of a modified conviction unreliable. *Id.* at 367, 461 N.W.2d at 782. *See also Griffin v. United States,* —— U.S. ——, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), *affirming* 913 F.2d 337 (7th Cir.1990).

■ After careful review we believe that the sufficiency of the evidence and the instruction to a jury on a lesser included offense are the two critical elements in permitting a modification of Holley's conviction. Although wrongly convicting Holley of robbery, the factfinder did need to find the elements of a forcible taking; the trial justice's error consisted in not peremptorily instructing the jurors that the verdict could not exceed that of assault with intent to rob because of the timing of the force applied. Holley's contention that he is entitled to a judgment of acquittal is therefore meritless. By being charged with robbery, Holley was implicitly being charged with all lesser included offenses of robbery. *See, e.g., State v. Dordain,* 566 A.2d 942 (R.I.1989); *see also* Super.R.Crim.P. 31(c). At best Holley was entitled to a limiting peremptory instruction and not an acquittal. Since the factfinder was instructed upon the greater offense and the lesser included offense and proof will not sustain the greater offense, the ability to convict on the lesser included offense is preserved. Sufficient evidence transformed that ability into reality here. Dovetailing sufficient evidence with the additional element of a lesser included instruction neither prejudices the trial strategy of the state or a defendant nor provides an unreliable verdict. As such, Holley's robbery conviction is modified and remanded to the Superior Court with directions to enter judgment of conviction of assault with intent to rob. We note that the modified judgment in no way disturbs the conviction of conspiracy to commit robbery.

■ The second issue Holley raises on appeal concerns the trial justice's failure to suppress Varadian's in- and out-of-court identifications of Holley. Specifically Holley contends that the combination of the unusual manner in which the photo arrays were presented to Varadian and the repetition of his picture renders Varadian's identification of Holley as the tuna thief suspect. We disagree.

Recently this court restated the well-settled two-step test used to determine whether an identification procedure employed by police violated a defendant's due-process rights. A court must (1) consider whether the procedures used were unnecessarily suggestive, and if found to be so, must then (2) determine whether the identification lacks "independent reliability" despite the nature of the identification procedure. *State v. Camirand,* 572 A.2d 290, 293 (R.I. 1990). When an identification procedure is found to be unnecessarily suggestive and conducive to a substantial likelihood of misidentification so that the accused is stripped of his or her due-process rights, a witness's out-of-court identification is not admissible at trial. *Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401, 411 (1972).

The record supplies the following additional facts. On March 6, 1987, in his store, Varadian was shown six Polaroid color photographs and was asked if he recognized in any one the image of the person who assaulted and robbed him in February. Laying out two rows of three photos each on the store counter, the Providence detective said nothing to direct or to divert Varadian's attention to or from any particular picture. The proprietor picked up the first photo, looked at it, and discarded it. Similarly he examined the second and replaced it on the counter. Upon inspecting the third photo, Varadian identified the individual as the second perpetrator. So certain was he of his choice, Varadian never examined the remaining photographs, although

he initialed and dated all pictures in the array. Three days later Varadian's choice was formally documented in a statement at the Providence police station.

Although the identification procedure used by the police detective was informal in that no contemporaneous record of Varadian's choice was made, we believe, following the first prong of the *Camirand* test, that the showing of the second photo array was not unnecessarily suggestive so as to contravene Holley's due process rights.

Additionally Holley correctly asserts that his photograph was the only one repeated in both photo arrays, a practice earlier condemned by this court. *State v. Nicoletti,* 471 A.2d 613 (R.I.1984). We noted in *Camirand* that an earlier photograph did not improperly influence later identification when the photograph in question was one that required a long acquaintance with the individual depicted in order to be significant. *Camirand,* 572 A.2d at 293. After examining the record, we believe the disparity of the likeness between the two photos underscores the fact that police procedures were not unduly suggestive. Holley's photo in the first array, state's exhibit No. 5, photo No. 4, is a small black-and-white photograph of Holley taken three years prior to the crime. The photo in the second array, state's exhibit No. 4, photo No. 3, is a color photograph taken only days before Varadian's examination and selection in his market. Although Holley's photograph was repeated in both arrays, we believe the difference in likeness is great enough to avoid a bias affecting Holley's due process rights. Accordingly since we believe none of the procedures are suggestive, we shall not pursue the second prong of the *Camirand* test. Last, as the out-of-court identification procedures were not highly suggestive, we believe Varadian's in-court identification was likewise proper.

Next we turn to address and to dispose of the remaining issues Holley raises on appeal. Holley, who is black, argues that the trial justice improperly allowed the state to remove from the jury the only black juror available for service, violating Holley's constitutional rights to equal protection, due process, and the right to a jury culled from a representative cross-section of the community. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Jenison,* 122 R.I. 142, 405 A.2d 3 (1979). We disagree.

■ Under the *Batson* three-step process for evaluating an objection to peremptory challenges, a defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race, then the burden shifts to the prosecutor to articulate a race-neutral reason for striking the juror(s) in question, whereupon the trial court is left to determine whether the defendant has carried his or her burden of proving purposeful discrimination. *Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 87–89.

The party alleging a discriminatory selection of the petit jury has the burden of proving "the existence of purposeful discrimination." *Batson,* 476 U.S. at 93, 106 S.Ct. at 1721, 90 L.Ed.2d at 85 (quoting *Whitus v. Georgia,* 385 U.S. 545, 550–51, 87 S.Ct. 643, 646–47, 17 L.Ed.2d 599, 603–04 (1967)). *See also Hernandez v. Texas,* 347 U.S. 475, 480–81, 74 S.Ct. 667, 671–72, 98 L.Ed. 866, 871 (1954). A defendant may establish such a prima facie showing by demonstrating that he or she

"is a member of a cognizable racial group * * * and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' * * * Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of pur-

poseful discrimination." *State v. Barber*, 539 A.2d 76, 78 (R.I.1988) (quoting *Batson*, 476 U.S. at 96, 106 S. Ct. at 1723, 90 L.Ed.2d at 87–88).[3]

We believe that Holley has made out a prima facie case. Even a single discriminatory act against one individual, such as the exclusion of one prospective juror of the same race, is sufficient to establish a prima facie showing. *See, e.g., United States v. Horsley*, 864 F.2d 1543 (11th Cir.1989). However, we also believe that Holley's challenge lacks the factual strength to satisfy the remaining steps of the *Batson* process. Once a defendant establishes a prima facie case, it becomes the state's obligation to rebut it by articulating a neutral explanation for challenging the juror(s). *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88. The prosecutor may not rebut a defendant's prima facie showing by a mere denial of a discriminatory motive or affirming that an action was taken in good faith. Instead the prosecutor must state an explanation related to the particular case at hand. *Id.* at 98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 88. The prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause. *Id.* at 97, 106 S.Ct. at 1723, 90 L.Ed.2d at 88.

A finding of discriminatory intent turns upon the evaluation of the prosecution's credibility. *Id.* at 98 n. 21, 106 S.Ct. at 1724 n. 21, 90 L.Ed.2d at 89 n. 21. Indeed, "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez v. New York*, — U.S. —, —, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395, 409 (1991). In addition the trial justice's evaluation of the prosecutor's state of mind is accorded great deference. *Id.* (citing *Wainwright v.*

*Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841, 854 (1985)).

The state asserts that the prosecutor offered a credible race-neutral explanation for the peremptory challenge. The record indicates that the prosecutor removed the juror because he was concerned with "his demeanor and his ability to follow your [the trial justice's] instructions regarding the standard of proof. Judge, I have a right to peremptory challenge somebody on body motion, eye contact. I'm not challenging him because of his race." We note that this exchange transcribed in the record cannot convey the expression, demeanor, or tone of the juror or of the prosecutor. However, observing that the trial justice both accepted the prosecutor's explanation as satisfying this peremptory challenge and concluded that the prosecutor did not discriminate on the basis of race, we shall, on review, uphold the trial justice's finding that the prosecutor complied with *Batson*.

■ The fourth issue Holley raises on appeal involves the trial justice's denial of Holley's motion to pass the case when at Holley's trial a gun and a blue jumpsuit seized from Spratt were displayed. Holley contends that these items were highly prejudicial and not relevant to his case. We disagree.

The record indicates that the items in question were not received into evidence. Following a denial of Holley's motion to pass, defense counsel did not object to the trial justice's cautionary final instruction to the jury. Previously we have held that in similar circumstances, the issue is not properly preserved for appeal. *See Camirand*, 572 A.2d at 294.

Accordingly we move on to the fifth and final issue on appeal. Holley contends that the trial justice failed to permit defense counsel to question the reason for a fourteen-month delay between the positive identification of Holley as a robber and the

---

**3.** The requirement that a defendant be a member of a "cognizable racial group" is no longer valid in light of *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990). Indeed the right to object to racially motivated peremptory challenges has been extended to civil litigants as well. *Edmonson v. Leesville Concrete Co.*, — U.S. —, 111 S.Ct.2077, 114 L.Ed.2d 660 (1991).

charging of Holley with the crime. We disagree.

■ For a court to dismiss the indictment as a violation of due process, a defendant must demonstrate that he or she was actually prejudiced during the preindictment delay and that the prosecution intended such delay in order to gain some tactical advantage. *State v. Vanasse*, 593 A.2d 58, 64 (R.I.1991) (citing *United States v. Acevedo*, 842 F.2d 502, 504 (1st Cir.1988); *United States v. Lebron–Gonzalez*, 816 F.2d 823, 831 (1st Cir.1987)). Holley's contention is meritless. A thorough perusal of the record shows that Holley did not, and cannot, demonstrate any actual prejudice as a result of this delay. Accordingly we believe the trial justice did not abuse his discretion in refusing to allow defense counsel to explore reasons why Holley was not immediately charged with his crimes.

For the foregoing reasons we vacate the conviction for robbery and remand the case to the Superior Court with directions to enter a judgment of conviction of assault with intent to rob and to resentence Holley upon that charge.