STATE

v.

**Thomas AUSTIN.**

No. 92–237–C.A.

Supreme Court of Rhode Island.

June 3, 1994.

Jeffrey Pine, Atty. Gen., Annie Goldberg, Aaron Weisman, Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

WEISBERGER, Acting Chief Justice.

This case comes before us on appeal from the Superior Court where Thomas Austin (defendant) was found guilty of three counts of robbery and sentenced to three life terms to be served concurrently. We deny the defendant's appeal and affirm his conviction. The facts insofar as pertinent to this appeal are as follows.

On February 7, 1990, at approximately 3:45 p.m., defendant entered the Attleboro Pawtucket Savings Bank in North Providence, Rhode Island, and asked one of the tellers on duty whether a "Jean" or "Gina" was working. When he was informed that nobody by that name worked there, he left the bank. Shortly thereafter, defendant returned and approached one of the three tellers on duty, pointed a revolver at her, and demanded that she fill a brown paper bag with money. The defendant next went to the windows of the other two tellers and similarly displayed his weapon and had them fill the bag with money from their cash drawers.

After retrieving the bag from the third teller, defendant fled the bank.

After defendant left, one of the tellers activated an alarm and the North Providence police arrived soon thereafter and took statements from the three. Each teller described the assailant as a white male who was tall and thin, wearing a knit cap. Two of the tellers informed the police that the assailant had a long nose. Each teller stated that she would be able to recognize the robber if she saw him again.

Approximately three weeks after the incident, each of the tellers went to the North Providence police station and was asked to examine a photo array of five or six pictures. At that time each teller selected a photograph of defendant and identified him as the perpetrator of the holdup.

The defendant was arrested by the North Providence police on February 27, 1990, while he was being held by the Providence police on another charge. A grand jury in Providence County subsequently indicted defendant on April 12, 1990, and he was arraigned on May 9, 1990. The defendant originally appeared for trial on March 11, 1991. After the court addressed several preliminary matters and began to impanel the jury, a prospective juror stated that he had seen defendant while working at the Adult Correctional Institutions (ACI). Because the entire available jury panel had heard the comment, the trial justice granted defendant's motion to pass the case.

The defendant next appeared for trial on April 9, 1991. At the trial the state presented the oral testimony of the investigating officer from the North Providence police department and the three tellers from the Attleboro Pawtucket Savings Bank. Each of the tellers also made an in-court identification of defendant as the perpetrator of the crime against her. The defendant did not testify, nor did he present any witnesses. After trial the jury found defendant guilty of three counts of robbery stemming from the incidents at the Attleboro Pawtucket Savings Bank. The trial justice subsequently denied defendant's motion for a new trial and sentenced him to three life sentences to be served concurrently.

On appeal defendant presents four challenges to his conviction. We shall address each claim in turn and present such other facts as are necessary to the discussion of each issue.

I

■ The defendant first asserts that his right to counsel was violated when the trial justice refused to permit him to substitute counsel on the eve of trial. The defendant was originally assigned an attorney from the Office of the Public Defender to represent him. Two months later, the assistant public defender withdrew his appearance. John P. O'Connor, Esq. (O'Connor), subsequently was court appointed and entered an appearance for defendant on July 25, 1990.

O'Connor first made a motion to withdraw on October 10, 1990. A notation was made on defendant's docket sheet that this motion was "denied" on October 15, 1990. O'Connor renewed his motion when the case was first reached for trial on March 11, 1991. O'Connor stated that he and defendant were experiencing certain "conflicts" regarding O'Connor's representation. At that time O'Connor represented to the court that there was a private attorney, Thomas Hutton, Esq. (Hutton), who wished to represent defendant and would be retained by defendant's family and friends. However, Hutton was not present in the courtroom that day, and his proposed entry of appearance had been delivered by an associate, Joseph Hickey, Esq. (Hickey), who at that time was under suspension from the practice of law by this court.[1] The trial justice denied O'Connor's motion to withdraw, especially because Hutton's appearance would also necessitate a three-week continuance in the case. Moreover, the trial justice stated that after meeting with O'Connor in various pretrial sessions involving the case, he was satisfied that O'Connor was "more than capable to handle the defense" of defendant. After a colloquy with defendant about the ramifications of appearing pro se

---

1. Both Hutton and Hickey subsequently have been disbarred because of matters unrelated to this case. *See In re Hickey*, 623 A.2d 36 (R.I. 1993); *In re Hutton*, 610 A.2d 110 (R.I.1992).

with O'Connor as standby counsel, defendant decided to proceed with O'Connor as trial counsel. However, as noted above, the case was subsequently passed because of the comment made by a prospective juror about defendant's presence at the ACI.

When defendant's case was reached on April 9, 1991, O'Connor renewed his motion to withdraw. At this juncture O'Connor represented to the trial justice that although he had prepared the case and was ready to begin the trial, Hickey had "express[ed] an interest" in representing defendant in the trial that was about to commence. By this time Hickey was no longer under suspension. The trial justice then correctly noted that Hickey had not entered any appearance, nor was he present to begin any possible representation of defendant. She then denied defendant's request for a continuance in order to "get a hold of Mr. Hickey." The trial subsequently proceeded with O'Connor as trial counsel.

We have stated in the past that a criminal defendant's right—pursuant to article 1, section 10, of the Rhode Island Constitution and the Sixth Amendment to the United States Constitution—to have the counsel of his or her choice

"is not an unqualified one. The right of a criminal defendant to have counsel of his or her choice must be balanced against the public's right to 'the efficient and effective administration of criminal justice.' * * * The question, therefore, regarding a defendant's request for a continuance to secure alternate counsel is a matter properly left to the sound discretion of the trial justice." *State v. Kennedy*, 586 A.2d 1089, 1091 (R.I.1991); *see also State v. Ashness*, 461 A.2d 659, 663 (R.I.1983).

■ The trial justice below did not abuse her discretion. The defendant had been allowed to substitute court-appointed counsel once previously in his case. Moreover, at no time was either Hutton or Hickey in court with an appearance ready to proceed with the case. If defendant wished to have Hickey represent him on the day the trial commenced in April 1991, Hickey should have been present in the courtroom ready to proceed in order for the trial justice even to

consider allowing O'Connor to withdraw and Hickey to enter an appearance. The trial justice found that O'Connor was prepared and ready to proceed with jury selection and the trial. In a colloquy with the trial justice, O'Connor disclosed that he had no notice prior to the date of trial that Hickey was prepared to represent defendant. The trial justice did not abuse her discretion in denying the motion for a continuance so that Hickey could be summoned to the courthouse to enter an appearance—without any reliable indication that he would be prepared to proceed directly to trial. The defendant's arguments on the first issue must be rejected.

II

■ The defendant next claims that his right to a speedy trial guaranteed by the Federal and State Constitutions has been abridged. The trial on the current charges began on April 9, 1991—thirteen months and thirteen days after defendant's arrest, eleven months and twenty-eight days after his indictment, and eleven months after his arraignment. The defendant asks that we examine the delay using the four-factor test from *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972).

In *Barker* the United States Supreme Court presented four factors to be balanced in determining whether a criminal defendant's right to a speedy trial has been infringed. These factors are (1) the length of delay, (2) the reasons for delay, (3) the assertion by the defendant of the right to a speedy trial, and (4) the prejudice against the defendant caused by the delay in the trial. 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *see also State v. Perez*, 605 A.2d 1305, 1310 (R.I.1992); *Tate v. Howard*, 110 R.I. 641, 648, 296 A.2d 19, 24 (1972). However, the Court also noted that the length of the delay must be of sufficient duration to become "presumptively prejudicial" in order to invoke the other three factors of the analysis. *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117; *see also Perez*, 605 A.2d at 1310; *State v. Nordstrom*, 529 A.2d 107, 111 (R.I.1987).

In employing the *Barker* factors in prior cases, we have found that periods lasting anywhere from fifteen months to six years were presumptively prejudicial and therefore triggered the full *Barker* analysis. *See, e.g., State v. Long,* 488 A.2d 427, 436 (R.I.1985) (fifteen months from arraignment to trial is sufficient duration to require inquiry into the remaining three factors of the *Barker* test); *State v. Grundy,* 582 A.2d 1166, 1168 (R.I. 1990) (six-year delay "may have prejudiced defendant"). Moreover, in *State v. Tarvis,* 465 A.2d 164, 174–75 (R.I.1983), we examined all four prongs of the *Barker* test when there was only a ten-month delay from the issuance of a felony complaint to the date of trial. However, in *Tarvis* we also admonished that "in a future case we may draw the line regarding 'presumptively prejudicial' delay at twelve months in the absence of special circumstances." *Id.* at 175.

Upon reflecting upon the reasoning of *Tarvis,* we apply that general principle to the facts of this case. When we consider that the lapse of time in *Barker* was approximately five years and apply the teachings of that case to this case, where the lapse of time between indictment and trial was approximately eleven and one-half months and where the lapse of time between arrest and trial was approximately thirteen and one-half months, the short answer seems clear to us that the delay was not presumptively prejudicial and no further *Barker* analysis needs to be applied here. We would therefore hold as a matter of law that defendant's right to a speedy trial guaranteed by the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution has not been violated by this interval of time. We point out, however, that even the brief period between arrest and trial experienced by defendant in this case was due in part to a request by him for a continuance and clearly appears to have involved no deliberate attempts by the state to delay the trial. The defendant's appeal on this issue is denied.

### III

█ The defendant next asserts that the trial justice violated constitutional mandates when she allowed the prosecutor to use a peremptory challenge to remove from the jury the only black person available among the panel from which the jury was to be selected. The juror in question had spontaneously revealed to the trial justice that his son was incarcerated for a robbery conviction at the ACI. After inquiring into his ability to be impartial in the current case, the trial justice declined to remove the juror for cause. The prosecutor then used one of the state's peremptory challenges to exclude the prospective juror, at which time defendant raised a timely objection based on the principles enunciated by the United States Supreme Court in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

In ruling on the objection, the trial justice stated that the prosecutor had not used the peremptory challenge to strike this juror for any race-based reason, but rather for the obvious reason that his son's incarceration for the same type of offense may have created possible bias or sympathy for defendant. The prosecutor subsequently concurred that this was the basis of the challenge. The defendant now asserts that the trial justice was incorrect in this ruling.

█ In *Batson v. Kentucky* the United States Supreme Court held that the Equal Protection Clause contained in the Fourteenth Amendment to the United States Constitution prohibits the use of race-based peremptory challenges in impaneling a jury. Although the *Batson* Court stated that a defendant was required to be of the same race as the excluded juror in order to make a prima facie showing of purposeful discrimination, *see Batson,* 476 U.S. at 96, 106 S.Ct. at 1722, 90 L.Ed.2d at 88; *see also State v. Kelly,* 554 A.2d 632, 634 (R.I.1989), in *Powers* the Court modified its ruling from *Batson* and held that a white defendant could assert a *Batson* challenge when black jurors are excluded from a jury by means of a race-based peremptory challenge, 499 U.S. at 404–05, 111 S.Ct. at 1368, 113 L.Ed.2d at 421. The Court held that, in essence, the white defendant asserts the equal-protection right on behalf of the excluded black juror. *Id.* at 415, 111 S.Ct. at

1373, 113 L.Ed.2d at 428. In the case at bar, therefore, defendant, who is white, has standing to bring a *Batson* challenge to the prosecutor's use of peremptory challenges.

In order successfully to assert a *Batson* claim, the moving party

"must first make a prima facie showing that the [nonmoving party] has exercised peremptory challenges on the basis of race, then the burden shifts to the [nonmoving party] to articulate a race-neutral reason for striking the juror(s) in question, whereupon the trial court is left to determine whether the [moving party] has carried his or her burden of proving purposeful discrimination. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723–24, 90 L.Ed.2d at 87–89." *State v. Holley*, 604 A.2d 772, 777 (R.I.1992).[2]

At the trial below, upon being presented with the *Batson* objection, the trial justice immediately accepted a race-neutral reason for the prosecutor's peremptory challenge to the black juror. The trial justice made no separate finding on the initial question of whether defendant had made a prima facie showing that the prosecutor had used her peremptory challenge based on the race of the venire person.

This situation is similar to the one faced by the United States Supreme Court in *Hernandez v. New York*, 500 U.S. 352, 358–60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395, 405 (1991) (plurality opinion), where "the trial court had no occasion to rule that [the moving party] had or had not made a prima facie showing of intentional discrimination." The Court concluded that

"[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Id.* at 359, 111 S.Ct. at 1866, 114 L.Ed.2d at 405.

Because the trial justice below similarly ruled on the ultimate question of intentional discrimination, we need not determine whether the exclusion from the jury of the only black person in the jury panel establishes a prima facie showing that the prosecutor exercised the state's peremptory challenge on the basis of race. We instead need only determine whether the trial justice erred in accepting the prosecutor's race-neutral reason for excluding the prospective juror.

In reviewing a trial justice's ruling on whether the nonmoving party has offered a sufficient race-neutral reason for exercising a peremptory challenge, the United States Supreme Court has stated the "[d]eference to trial court findings on the issue of discriminatory intent makes particular sense in this context because * * * the finding will 'largely turn on evaluation of credibility.' * * * There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869, 114 L.Ed.2d at 409; *see also State v. Holley*, 604 A.2d at 778 (trial justice to be afforded great deference, citing *Hernandez* ); *State v. Barber*, 539 A.2d 76, 78 (R.I.1988) ("trial justice's determination * * * is to be given great deference by us"). In the case at bar we hold that the trial judge reasonably found that the prosecutor exercised a peremptory challenge because the prospective juror's son was incarcerated at the ACI on a robbery conviction. Although the trial justice found that this relationship was an insufficient reason to excuse the juror for cause, it is certainly sufficient to verify its race-neutral character. *See Hernandez*, 500 U.S. at 362, 111 S.Ct. at 1868, 114 L.Ed.2d at 407–08 ("[w]hile the reason offered by the prosecutor for a peremptory strike need not rise to the level of a challenge for cause * * * the fact that it corresponds to a valid for-cause challenge will demonstrate its race-neutral character"). We

---

**2.** The United States Supreme Court has additionally held that the *Batson* rationale is equally applicable to criminal defendants who make race-based peremptory challenges. *See Georgia v. McCollum,* — U.S. —, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992). Therefore, the moving party, not just the criminal defendant, has the burden of making a prima facie showing before the burden shifts to the nonmoving party.

therefore hold that defendant's challenge to the trial justice's ruling is without merit.

## IV

 The last issue defendant presents to us is that the trial justice abused her discretion in allowing the state to reopen its case in order to enter as full exhibits the three photo arrays examined by the tellers. During the investigating officer's testimony and the testimony of the tellers, the arrays were identified and referred to both by the prosecutor on direct examination and by defense counsel on cross-examination. However, two of the three arrays were only marked for identification; the prosecutor never moved to have them introduced as full exhibits.

After final argument but before the trial justice instructed the jury, the prosecutor realized that she may not have moved that any of the arrays be admitted as full exhibits and asked the court to allow her to reopen the state's case merely to move that the exhibits be admitted as such. The trial justice allowed her to reopen and, over defendant's objection, granted the state's motion.

It is within the sound discretion of the trial justice to determine whether to grant a motion to reopen. We shall not disturb a trial justice's decision unless the party on appeal clearly shows that the trial justice abused his or her discretion in ruling on the motion. *State v. Tavares,* 590 A.2d 867, 869 (R.I.1991); *State v. Benevides,* 420 A.2d 65, 68 (R.I.1980). In the case at bar, defendant has not met his burden.

In allowing the state to reopen its case merely to move that exhibits marked for identification be entered as full exhibits, the trial justice correctly permitted the state to rectify what, at the most, appears to have been a minor oversight. There was no question of the authenticity or validity of the photo arrays. Moreover, one of the three nearly identical arrays had been entered as a full exhibit during one teller's testimony. If anything, the trial justice may have abused her discretion if she had *failed* to allow the state to reopen its case. We therefore find the defendant's fourth challenge to his conviction to be without merit.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed. The papers in the case may be remanded to the Superior Court.