STATE

v.

John FEOLE.

No. 99–241–C.A.

Supreme Court of Rhode Island.

May 21, 2002.

Virginia M. McGinn, Aaron L. Weisman, Providence, for Plaintiff.

Paula Lynch Hardiman, Paula Rosin, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, J.

The defendant, John Feole, appealed a judgment of conviction for solicitation of murder, arguing that the trial justice erred by limiting any testimony that the defendant might give to a narrative form, without direct questioning by counsel, following the discretionary granting of the defendant's motion to reopen. We disagree and affirm the judgment of the trial justice, who granted the defendant's motion to reopen after the defendant rested.

### Evidence Presented at Trial

At trial, one Alfred Korsak, Jr. (Korsak), testified that he had been acquainted with defendant for about a year when defendant, who lived about a mile down the road from Korsak in Chepachet, Rhode Island, went to Korsak's home, unannounced, on February 19, 1995. According to Korsak, defendant told him that "he had

a problem and wanted me to take care of the problem. He wanted some people blown away." The defendant allegedly explained to Korsak that he was seeking a new trial on a criminal conviction, and he wanted the witnesses "taken care of."[1] Korsak told defendant to come back another time because he had visitors; defendant departed, only to return later the same day, still pressing his request. Korsak again told defendant to leave, and defendant returned the next morning, renewing his request that Korsak carry out the "shootings." Later that day, Korsak went to defendant's house, and after defendant drew diagrams in the backyard dirt to show Korsak where the witnesses resided, he rode with Korsak past each of the residences he had described. The defendant was carrying a gun and said he would supply Korsak with the gun for the murders.

Korsak contacted Lt. Jamie Hainsworth (Lt. Hainsworth) of the Glocester police and reported defendant's solicitation. The police asked Korsak to wear a tape recording device at a later meeting with defendant, during which defendant stated that he could not supply the weapon, but he agreed to pay $10,000 for the killings. Korsak returned to defendant's house later that day, again wearing a recording device, and defendant supplied him with bullets, a gun that he said was broken, $80 to fix the weapon or trade it in, and a bottle of Scotch. The defendant said he wanted the murders completed "on a Monday which was the eighth because he was due back in Court in front of the Judge for a motion for a new trial."

In addition to Korsak's detailed descriptions of his meetings with defendant, the state presented four state police officers and Lt. Hainsworth, who corroborated

Korsak's story. His testimony was also substantiated by the testimony of one of the intended victims, whose house Korsak had identified as one defendant had pointed out, and also by tape recordings from his wiretapped conversations with defendant, by photographs of the markings in Feole's backyard, by the gun and ammunition Feole had supplied to Korsak, and by fingerprints on the glasses and the bottle of Scotch Feole and Korsak had shared. The state also established a motive for the crime that was consistent with the evidence, namely, retaliation against the witnesses in his previous trial.

The defense cross-examined the state's witnesses on the theory that Korsak was lying to curry favor with the police, but rested without presenting any witnesses, subject to a motion for a judgment of acquittal. The judge reserved ruling on the motion until after the return of the verdict.

### Limitation on Proposed Testimony after Reopening and Procedural History

The next day, after both parties had rested and just before the attorneys were to begin closing arguments, defense counsel indicated to the trial justice that defendant was insisting that he and his brother be permitted to testify. The defense attorney explained that he had previously discussed with defendant that he "had no intention of putting [defendant] on the stand" and that defendant's brother could add nothing that would affect the outcome of the case. The defense had rested with the concurrence of defendant on the previous day.

The trial justice questioned defendant, who stated that he was rejecting his attor-

---

1. The motion for a new trial was denied, and defendant's convictions for extortion and usu-

ry were affirmed by this Court. *See State v. Feole,* 748 A.2d 239 (R.I.2000) (per curiam).

ney's advice not to testify. The defendant then suggested that he wanted the court to look at some papers he had, and he complained about vandalism at his home and the postponement of the trial. The justice responded, "[Y]our attorney's given you an excellent defense in this case," and continued, "If you wish to testify I will entertain a motion to reopen the defense and give you an opportunity to testify but this is against your attorney's advice, you understand that." The defendant stated that his attorney had not spent enough time with him. When the justice asked defendant whether he wished to testify, defendant responded, "Yes, I will," but when the justice said, "He has to ask you questions," defendant replied, in broken English,

> "No, no, I want be finished the testimony question, the testimony, I can't say to the State Police this gentleman is the State Police. I often saw the second time I saw this gentleman. I want him to question him, things that's supposed to be questioned. I told him he's got to ask him, okay. This is the State Police I want him to question where I was when the civilian on me, they been on me, I was in the casino, how was I to have of this person killed. How could I take him to Mr. Rocchio's family's houses. This gentleman, he was a police officer surveilling me. Why you stopping me because it never was true."

The justice asked, "Do you want to testify in front of a jury?", and defendant stated, "I'm going to start right from the beginning through the end. This case start in '92."

After the justice engaged in a bench conference with the attorneys, defendant's attorney stated, on the record,

> "I'm asking this Court to reopen the defense and to allow Mr. Feole to testify against my professional judgment. This goes against everything I feel is in his

best interest. In fact it's detrimental to his interest, and secondly, I was not prepared, as your Honor should know, to conduct a direct examination of my client at this particular point in time because I was prepared for final arguments this morning. As far as the statements that were made by Mr. Feole, they concern another case that was not before this Court and specifically with the request that he was to make a further cross-examination of a particular witness, that would have been beyond the scope of the direct testimony, your Honor, and it's not something that I could get into."

The Court responded and addressed defendant:

> "I'm going to grant the motion to reopen the defense with certain conditions * * *. I will permit you to take the stand and make a statement to the jury without your attorney questioning you because your attorney is not in a position to ask any questions at this point because as he indicates he was taken by surprise. I will permit you to make a statement to the jury but you must remember that statement that you make must be confined to what happened on or about February 21st, 22nd, 23rd of 1995. You cannot go into your other case. You can't testify about another case."

The discussion continued:

> "THE DEFENDANT: They brought it up. He come in with evidence, you got evidence right here.
>
> "THE COURT: Look, I will be as liberal as I can be within reason. What I'm saying, we are not going to retry the other case.
>
> " * * *
>
> "THE COURT: I will allow you to speak. If it's not related or you go off

on a tangent I'm going to stop you. Do you understand?

"THE DEFENDANT: What I want, I want to stop the case, get me a lawyer. I want to question, I want to talk with a lawyer. The lawyer got to tell me something.

"THE COURT: I'm not going to give you another lawyer when we tried the case for five, six days.

"THE DEFENDANT: Give me five minutes with a lawyer.

"THE COURT: You have a good lawyer.

"THE DEFENDANT: I don't deny that. It's things got to be done right now. Your Honor, I'm in prison for something I never done, some would say so it's an officer went to my house ripping my house apart."

After the jury returned, the trial justice said, "You're resting," and asked defendant, "Mr. Feole, do you wish to take the stand?" When defendant responded, "I don't have a lawyer," the justice rejoined, "The answer is no. All right, the case is rested, both sides. Ladies and gentlemen, we will now hear final arguments."

■ That same day, the jury returned a verdict of guilty on the charge of criminal solicitation, and the trial justice denied defendant's motion for a judgment of acquittal. After denying defendant's motion for a new trial, the trial justice sentenced defendant to ten years in the Adult Cor-

rectional Institutions, with seven years to serve and three years suspended.[2] The defendant appealed, claiming that the trial justice impermissibly limited his testimony after reopening and arguing that, by forcing him to forgo direct examination by an attorney, the trial justice forced him to choose between his constitutional right to the assistance of counsel and his right to testify on his own behalf. After a careful review of the record, we conclude that defendant's rights were not infringed by the trial justice's limitation in this case.[3]

### Defendant's Right to Testify

■ The United States Supreme Court noted in *Nix v. Whiteside*, 475 U.S. 157, 164, 106 S.Ct. 988, 992, 89 L.Ed.2d 123, 133 (1986), that the right of criminal defendants to testify in their own defense is of relatively recent origin. Until the latter part of the nineteenth century, criminal defendants were disqualified from giving sworn testimony at their own trials because of their interest in the outcome of the case. *Id.* at 164, 106 S.Ct. at 992–93, 89 L.Ed.2d at 133. This disqualification was abolished in the late nineteenth century by state and federal statutes.[4] *Id.* at 164, 106 S.Ct. at 993, 89 L.Ed.2d at 133. Before this abolition, a practice developed at common law of permitting defendants to tell their side of the story in unsworn statements that could not be elicited through direct examination and were not subject to cross-examination. *Rock v. Ar-*

---

2. The trial justice made this sentence consecutive to the fifteen-year sentence, with ten years to serve, that defendant was serving for his previous conviction.

3. The defendant commented that the trial justice also barred him from testifying about the previous offenses that constituted the alleged motive for the solicitation. Because defendant did not raise that issue as error on appeal, we decline to address it. Sup.Ct.R. 16(a).

4. Rhode Island's statute states, "No respondent in a criminal prosecution, offering himself or herself as a witness, shall be excluded from testifying because he or she is the respondent. Neglect or refusal to testify creates no presumption, nor may it be used in argument against him or her." G.L.1956 § 12–17–9.

*kansas,* 483 U.S. 44, 49, 107 S.Ct. 2704, 2708, 97 L.Ed.2d 37, 45 (1987). In *Ferguson v. Georgia,* 365 U.S. 570, 596, 81 S.Ct. 756, 770, 5 L.Ed.2d 783, 798–99 (1961), the United States Supreme Court struck down a Georgia statute that limited an accused's presentation at trial to an unsworn statement, holding that the statute denied the defendant his right to have his counsel question him to elicit his statement. The Supreme Court has expressed the modern view that "[t]here is no justification today for a rule that denies an accused the opportunity to offer his own testimony." *Rock,* 483 U.S. at 52, 107 S.Ct. at 2709, 97 L.Ed.2d at 46.

■■■ Although the right to testify on one's own behalf is a fundamental right, it can be waived by a defendant on advice of counsel. "Unaccompanied by coercion, legal advice concerning exercise of the right to testify infringes no right * * * but simply discharges defense counsel's ethical responsibility to the accused." *Lema v. United States,* 987 F.2d 48, 52 (1st Cir. 1993). In the absence of extraordinary circumstances, courts generally will assume that a defendant who has not taken the stand has knowingly and voluntarily waived his right to testify. *See, e.g., Passos–Paternina v. United States,* 12 F.Supp.2d 231, 237–40 (D.P.R.1998), *aff'd,* 201 F.3d 428 (1st Cir.1999). The right to testify is not absolute, however, and may be limited "to accommodate other legitimate interests in the criminal trial process." *Rock,* 483 U.S. at 55, 107 S.Ct. at 2711, 97 L.Ed.2d at 49 (quoting *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973)).

Here, defendant's attorney informed the court that:

"just a few moments ago Mr. Feole was insisting that I put him on the stand and that I put his brother on the stand and ask these people questions at this partic-

ular point in time. Now, we rested yesterday. I discussed in the past and I discussed with Mr. Feole that I had no intention of putting him on the stand in this particular case. * * * I rested with the concurrence of Mr. Feole yesterday. He understands that today would be final arguments and it's now as I sit here that he is insisting on these particular things taking place. This is the first notice I have had of this, your Honor, * * *. I obviously can't make decisions for the Defendant."

The attorney then asked the court, on the record, to reopen to allow defendant to testify against his professional judgment, while noting his concerns that, "[t]his goes against everything I feel is in his best interest. In fact it's detrimental to his interest, and secondly, I was not prepared, as your Honor should know, to conduct a direct examination of my client at this particular point in time because I was prepared for final arguments this morning. As far as the statements that were made by Mr. Feole, they concern another case that was not before this Court and specifically with the request that he was to make a further cross-examination of a particular witness, that would have been beyond the scope of the direct testimony, your Honor, and it's not something that I could get into."

In this case, defendant did not dispute that he waived his right to testify at trial and that his lawyer had rested with defendant's consent. Rather, defendant apparently had a change of heart after the close of evidence and sought to reassert his right through a motion to reopen. The defense attorney clearly was unprepared to question defendant at that point when both parties had rested and attorneys were expecting to present closing arguments.

The trial justice was thus confronted with a choice. He could deny the motion and proceed to closing arguments, thereby precluding defendant from testifying altogether; he could halt the trial after the close of evidence and allow defendant to obtain substitute counsel; or he could grant the motion to reopen and permit defendant to testify, despite defense counsel's reluctance to conduct examination and even though the testimony that defendant wished to present was clearly inadmissible. The trial justice chose this latter option but exercised his discretion and imposed certain conditions. First, he relieved defendant's attorney from conducting examination[5] and, more significantly, he precluded defendant from presenting any evidence pertaining to his earlier, unrelated prosecution. It was this later condition—the refusal of the trial justice to permit defendant to retry his previous conviction—that, we conclude, led to defendant's demand to "stop the case, get me a lawyer. * * * I want to talk with a lawyer. The lawyer got to tell me something." Further, we are of the opinion that Feole ultimately refused to testify because he was prevented from introducing irrelevant and inadmissible evidence. Accordingly, we are not convinced that defendant was deprived of the right to testify in his own behalf. Rather, we conclude that defendant voluntarily refused to take the stand after the case was reopened, and for the second time during this trial, defendant knowingly waived his right to testify because he was not permitted to consult with another attorney and, more critically, because he was precluded from introducing extraneous evidence before the jury. We are therefore satisfied that the trial justice did not err in permitting the defense to reopen its case under certain conditions that defendant voluntarily rejected when he refused to testify.

■ We have often held that "[i]t is within the sound discretion of the trial justice to determine whether to grant a motion to reopen." *State v. Austin*, 642 A.2d 673, 679 (R.I.1994). We shall not disturb that decision "unless the party on appeal clearly shows that the trial justice abused his or her discretion in ruling on the motion." *Id.* (citing *State v. Tavares*, 590 A.2d 867, 869 (R.I.1991); *State v. Benevides*, 420 A.2d 65, 68 (R.I.1980)). In view of the trial justice's opinion that defendant's attorney had presented "an excellent defense," and in view of defendant's previous acquiescence in his attorney's resting, we are of the opinion that even had the trial justice denied defendant's motion to reopen the case, such a ruling would not have constituted an abuse of discretion. Consequently, it was within the trial justice's discretion to grant the motion with conditions. *Cf. Perry v. Leeke*, 488 U.S. 272, 283–84, 109 S.Ct. 594, 601–02, 102 L.Ed.2d 624, 635–36 (1989) (holding that the Sixth Amendment right to the assistance of counsel does not include the right to confer with counsel after the close of direct examination during a fifteen-minute recess that the trial judge "ha[d] the unquestioned power to refuse"). Moreover, although the narrative form of testimony has fallen out of favor, we believe the condition imposed here was reasonable in light of defendant's previous consent to his counsel's resting and his attorney's statements that he was unprepared to question his client. *But cf. United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 120–21 (3d Cir.1977) (holding

---

**5.** The defendant may have waived his right to examination by his attorney when, in response to the court's admonishment that his attorney "has to ask you questions," defendant responded, "[n]o, no, I want be finished the testimony question, I want him to question him, things that's supposed to be questioned. I told him he's got to ask him, okay."

that when trial judge ruled that the defendant would have to represent himself for the remainder of trial if he insisted on testifying, the defendant was denied his Sixth Amendment right to the assistance of counsel and the ruling "worked as a lever to pry from [the defendant] his statutory right to testify"). We are of the opinion that, under the circumstances of this trial, the trial justice's limiting defendant to a narrative form of testimony without examination by his attorney and refusing to allow defendant to refer to the earlier trial constituted reasonable conditions that rested well within the discretion of the trial justice. In any event, it appears to us that this is exactly what defendant's attorney was asking the court to do. In addition, it is our opinion that, after balancing the overwhelming evidence presented by the state, including Korsak's recorded conversations with defendant, against defendant's purported testimony, the trial justice's limitation did not prejudice defendant's case in any way, was reasonable under the circumstances, and best promoted defendant's right to testify. Thus, defendant waived any right to object to the court's ruling when his attorney asked the court to reopen and to allow defendant to testify in the above-described manner, and when neither defendant nor his attorney objected to the conditions that the trial justice placed on the granting of this motion.

Therefore, it is our opinion that the resolution set forth by the trial justice afforded defendant his right to testify and promoted the fair and expeditious termination of the case without unduly delaying the

trial or prejudicing the state. We therefore hold that the conditional grant of the motion to reopen was proper, and that under the circumstances of this case it did not run afoul of defendant's right to testify.

**Defendant's Right to Counsel**

■ ■ The Sixth Amendment to the United States Constitution ensures criminal defendants the right to the assistance of counsel at all critical stages of criminal proceedings, unless the right is competently and intelligently waived. *United States v. Wade*, 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149, 1156 (1967); *Gideon v. Wainwright*, 372 U.S. 335, 339–40, 83 S.Ct. 792, 794, 9 L.Ed.2d 799, 802 (1963). This right has been held applicable to state criminal proceedings through the Fourteenth Amendment's Due Process Clause. *Gideon*, 372 U.S. at 342, 83 S.Ct. at 795, 9 L.Ed.2d at 804. Moreover, the right to counsel is also embodied in the Rhode Island Constitution, which states, "In all criminal prosecutions, accused persons shall enjoy the right * * * to have the assistance of counsel in their defense." R.I. Const. art. 1, sec. 10.

Faced with an attorney who was unprepared or unwilling to examine his client,[6] but who was nonetheless asking the court to reopen the case to allow his client to testify, the trial justice in the case *sub judice* reopened the case on the condition that defendant testify without examination by his counsel. After hearing this condition, defendant asked for a new attorney, a request that the trial justice denied. In light of the fact that the denial of defen-

---

**6.** Although there is no evidence in the record either way, defendant's attorney may have avoided questioning defendant because he believed to do so would have involved the suborning of perjury. In the evolution of ethical standards for attorneys faced with clients who intend to commit perjury, one proposed

solution has been to permit a defendant to take the stand and offer testimony in a narrative form while counsel remained mute. *Nix v. Whiteside*, 475 U.S. 157, 170, n. 6, 106 S.Ct. 988, 996, n. 6, 89 L.Ed.2d 123, 136–37, n. 6, . However, the American Bar Association and most courts have rejected this approach. *Id.*

dant's motion to reopen was within the sound discretion of the trial justice; that defendant had earlier agreed to rest his case at the close of evidence; that defendant's attorney, in essence, had requested the court to allow defendant to testify in the absence of counsel's preparation; and that neither defendant nor his attorney objected to the conditions that the trial justice placed on reopening the case to receive defendant's testimony, we conclude that defendant's right to the assistance of counsel was not infringed.

■ The defendant apparently believed that once the discretionary motion to reopen was granted, his rights to a fully prepared colloquy with a willing attorney should be untrammeled. The right to counsel of one's choice is not unfettered or unlimited but must be balanced with the public's right to the efficient administration of justice. *Austin*, 642 A.2d at 676. Achieving that balance is an exercise properly left to the sound discretion of the trial justice, *id.*, and we believe that such discretion was properly exercised in this case. It is our opinion that the constitutional right to the effective assistance of counsel does not encompass the measures defendant requested to accommodate his change of heart, after the close of evidence.[7]

---

7. Having determined that defendant's trial rights were not violated in this case, we do not reach the issue of which standard of review is applicable when such a violation has occurred. We note, however, that when reviewing constitutional errors in criminal trials, the United States Supreme Court has promulgated a bipartite analysis. If the error constituted a structural defect that affects "[t]he entire conduct of the trial from beginning to end," automatic reversal is required. *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302, 331 (1991). If the error was merely a "trial error" that occurred during the course of the presentation of evidence to the jury and can be "quantitatively assessed in the context of other evidence presented in order to determine [the effect it had on the trial]," it is subject to a harmless error analysis. *Brecht v. Abrahamson*, 507 U.S. 619, 629, 113 S.Ct. 1710, 1717, 123 L.Ed.2d 353, 367 (1993) (quoting *Fulminante*, 499 U.S. at 308, 111 S.Ct. at 1264, 113 L.Ed.2d at 330).

The Supreme Court has held that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 437 (1978) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967)). Moreover, another line of cases suggests that the deprivation of the right to counsel requires reversal without inquiry into whether it created actual prejudice in a particular instance. *Perry v. Leeke*, 488 U.S. 272, 278–80, 109 S.Ct. 594, 599–600, 102 L.Ed.2d 624, 632–33 (1989) (citing *Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)). Thus, if the right to counsel has been violated, automatic reversal may be mandated under the United States Constitution.

However, the Supreme Court has also pointed out that "most constitutional errors can be harmless" and has held that even the right to have a coerced confession excluded from evidence is subject to a harmless error analysis. *Fulminante*, 499 U.S. at 306, 308–11, 111 S.Ct. at 1263, 1264–66, 113 L.Ed.2d at 329, 331–33. In distinguishing trial errors subject to a harmlessness analysis from structural defects, the Court has included in the latter category the "total" or "complete" deprivation of the right to counsel at trial. *Id.* at 309, 111 S.Ct. at 1265, 113 L.Ed.2d at 331; *see also, e.g., Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35, 46 (1999); *Johnson v. United States*, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718, 728 (1997); *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182, 189 (1993). In each of these cases, the Court cited *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), in which a Florida court entirely denied an indigent defendant the assistance of appointed counsel.

The defendant here was not deprived of counsel. He was only precluded from being questioned by an attorney during any testimony he chose to give, as a condition on the discretionary granting of a motion to reopen. The deprivation of counsel, if any, was of

**Question in the Presence of the Jury**

■▬▬ As an additional matter, we note that, after discussing defendant's motion to reopen while the jury was in recess, the trial justice reconvened the jury and asked defendant directly, in the jury's presence, "Mr. Feole, do you wish to take the stand?" When defendant responded, "I don't have a lawyer," the justice stated, "The answer is no," and directed counsel to proceed with final arguments. The trial justice's asking, in the jury's presence, whether defendant wished to take the stand was error because the exchange may have led the jury to speculate that defendant had something to hide by not taking the stand.

It is clear from the record that this exchange was precipitated by the justice's frustration with the defendant, who agreed that he was represented by a "good lawyer," but then, well after the eleventh hour of trial and against the advice of his counsel, asked the trial justice to "stop the case and get [him] a lawyer." In addition, the defendant expected to reexamine the state police, introduce new evidence, and revisit the trial of a previous conviction. The trial justice later did instruct the jury, "From the failure of the Defendant to testify, you, the members of the jury may not and must not draw any inference of guilt of the Defendant." At the point when the trial justice asked the defendant in the jury's presence whether he would testify, defense counsel had not withdrawn from representing the defendant. Defense counsel, however, neither objected nor did he move to pass the case after the trial justice's question to the defendant. Moreover, the defendant failed to brief or argue the issue on appeal. Consequently, the issue was not properly preserved for our review.

See Sup.Ct.R.16(a); *State v. Pacheco*, 763 A.2d 971, 976 (R.I.2001).

**Conclusion**

For these reasons, we deny and dismiss the defendant's appeal, affirm the judgment of conviction, and return the papers of this case to the Superior Court.

FLANDERS, J., dissenting.

Because I believe that the trial justice violated the defendant's federal constitutional right to counsel under the Sixth Amendment to the United States Constitution, I respectfully dissent from my colleagues' opinion. Specifically, I would hold that the trial justice twice violated the defendant's Sixth Amendment right to counsel: (1) when he prevented the defendant's counsel from conducting a direct examination of the defendant after granting the defendant's request to allow him to reopen his case so that he could testify; and (2) when he asked the defendant whether he wanted to testify in front of the jury, and then refused to allow him to do so when the defendant responded that he did not have a lawyer. Because these violations of the defendant's constitutional right to counsel at trial constituted reversible errors, I would vacate the defendant's conviction and remand this case for a new trial.

The United States Supreme Court has stated that "the assistance of counsel is among those 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.'" *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426, 437 (1978) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705, 710 (1967)). The Court has further refined this statement in a line of

---

finite duration, quantitatively assessable in relation to the other evidence presented. *See*

*Fulminante*, 499 U.S. at 307–08, 111 S.Ct. at 1264, 113 L.Ed.2d at 330.

cases holding that even a limited deprivation of the defendant's right to counsel—if it occurs with respect to a critical stage of the trial proceedings—requires reversal without inquiry into whether any actual prejudice resulted from the deprivation. *Perry v. Leeke,* 488 U.S. 272, 278–80, 109 S.Ct. 594, 599–600, 102 L.Ed.2d 624, 632–33 (1989) (citing *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976)).

Thus, although the deprivation of counsel in this case was limited to defendant's forfeiting the assistance of counsel when the court allowed him to present his testimony to the jury—after the court's discretionary granting of defendant's motion to reopen his case—I am of the opinion that it nonetheless constituted a violation of defendant's constitutional right to the assistance of counsel at trial. Although the forfeiture of defendant's right to counsel at his trial only pertained to a limited portion of that trial, the presentation of the accused's own testimony was a critical portion of the trial; thus, it still amounted to a "structural" error of the kind that the United States Supreme Court condemned in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that a Florida court violated a defendant's Sixth Amendment right to counsel by completely denying him counsel). Despite the United States Supreme Court's emphasis on the *total* deprivation of the assistance of counsel in *Gideon,* the court-imposed deprivation of counsel in this case occurred during a critical stage of the trial when defendant sought to present his own testimony to the jury. Because of the importance of this deprivation to the structural fairness of the trial, I believe that the United States Constitution requires automatic reversal when, as here, a trial court has deprived one or more defendants of the opportunity to have their attorney question them during the presentation of the defendant's testimony through a direct examination. The right to counsel is guaranteed by the Sixth Amendment to the United States Constitution. Our high Court's interpretations of this right have stated that a criminal defendant is entitled to legal representation at all critical stages of criminal proceedings. *United States v. Wade,* 388 U.S. 218, 224–25, 87 S.Ct. 1926, 1931, 18 L.Ed.2d 1149, 1156 (1967).[8]

In *Ferguson v. Georgia,* 365 U.S. 570, 596, 81 S.Ct. 756, 770, 5 L.Ed.2d 783, 798–99 (1961), the United States Supreme Court struck down a Georgia statute that limited an accused's testimony at trial to an unsworn statement. The Court held that such a rule denied the defendant his right to have counsel question him in order to elicit his testimony. The Supreme Court emphasized that a defendant who has been instructed to make a statement to the jury without the aid of counsel "has been set adrift in an uncharted sea with nothing to guide him, with the result that his statement in most cases does him no good or is positively hurtful." *Id.* at 593, 81 S.Ct at 769, 5 L.Ed.2d at 797 (quoting 7 Ga.B.J. 432, 433 (1945)). The Court ruled that it was unconstitutional to "deny appellant the right to have his counsel question him to elicit his statement * * * [f]or otherwise, * * * 'the right to be heard by counsel would be of little worth.'" *Id.* at 596, 81 S.Ct. at 770, 5 L.Ed.2d at 798–99 (quoting *Chandler v. Fretag,* 348 U.S. 3, 10, 75 S.Ct. 1, 5, 99 L.Ed. 4, 10 (1954)).

---

8. The right to counsel is also protected by article 1, section 10, of the Rhode Island Constitution, which incorporates language similar to that of the Sixth Amendment. It provides in relevant part, "[i]n all criminal prosecutions, accused persons shall enjoy the right * * * to have the assistance of counsel in their defense." But because defendant did not raise a state constitutional argument, I do not base my dissent on the state constitution.

Like *Ferguson*, the case at bar calls upon us to review the propriety of a governmental restriction on a defendant's right to have his counsel conduct a direct examination of him when presenting his proposed testimony to the fact-finder. Although the Court in *Ferguson* addressed a statutory restriction on defendant's ability to testify at trial, the restriction imposed here by the trial justice constituted no less an infringement upon defendant's constitutional rights, and was no less harmful to those rights merely because its scope was limited to defendant's request to testify after the court had granted defendant's motion to reopen his case. *See United States ex rel. Wilcox v. Johnson*, 555 F.2d 115, 120–21 (3d Cir.1977) (holding that when a trial judge ruled that the defendant would have to represent himself for the remainder of the trial if he insisted on testifying, the trial judge denied the defendant his Sixth Amendment right to the assistance of counsel, and that the ruling "worked as a lever to pry from [the defendant] his statutory right to testify"). Here, I conclude, the trial justice essentially precluded defendant from exercising his constitutional right to testify with the assistance of counsel in his own defense, a right that exists despite the advice of defendant's own counsel that it was not in his best interests to testify. I believe that such a denial, whether imposed by statute or by judicial decree, constitutes reversible error.

Moreover, the trial justice further exacerbated his initial constitutional error when, in front of the jury—after allowing defendant to testify but only without his counsel's assistance—he asked defendant "Mr. Feole, do you wish to take the stand?" When defendant truthfully replied that, "I don't have a lawyer," the trial justice peremptorily cut him off by misconstruing his response as a negative answer to the question that the court had posed to him, instantly transforming defendant's comment into the negative response that the trial justice chose to hear: "[t]he answer is no." Thus, after setting defendant "'adrift in an uncharted sea with nothing to guide him,'" *Ferguson*, 365 U.S. at 593, 81 S.Ct. at 769, 5 L.Ed.2d at 797, the trial justice proceeded to sink the small, rudderless lifeboat from which he had forced defendant to testify, thereby torpedoing what was left of defendant's Sixth Amendment right to counsel.

The trial justice then ordered the attorneys to proceed with closing arguments without allowing defendant to testify. Despite the fact that the trial justice ventured a curative instruction, admonishing the jurors that "you, the members of the jury may not and must not draw any inference of guilt of the defendant" because of his failure to testify, the trial justice's questioning of defendant in front of the jury about this subject still constituted error, as did the court's misconstruction of the defendant's truthful observation that he did not have a lawyer to assist him if he wished "to take the stand." Also, the trial justice's impermissible query, in the presence of the jury, about whether defendant wanted to testify might have led the jurors to speculate that defendant was attempting to hide something from the jury, especially when the judge erroneously told the jurors that defendant had answered that he did not wish to take the stand. Thus, the trial justice compounded his initial error of requiring defendant to testify without counsel by refusing to allow him to testify at all, suggesting, in front of the jury, that he did not wish to take the stand even though defendant's response did not so indicate.

Even though denying the defendant's motion to reopen was within the trial justice's discretion, it was inappropriate for him to grant that motion by imposing the

unconstitutional condition that defendant's attorney could not question him during the presentation of his own testimony. Although it is true, as we have consistently held, that "[i]t is within the sound discretion of the trial justice to determine whether to grant a motion to reopen," *State v. Austin*, 642 A.2d 673, 679 (R.I.1994), the granting of such a motion with *unconstitutional* conditions does not fall within the realm of a trial justice's discretion.

Finally, I do not believe that the circumstances of this case justified the court in depriving defendant of his right to counsel when he advised the court of his desire to testify. The defendant did not dispute that he waived his right to testify during the initial presentation of his case and that his lawyer had rested the defense's case with his knowledge and consent. Although his counsel had informed the court that he was unprepared to question him before the trial justice granted the motion to reopen, I am of the opinion that once the court granted the motion to reopen, the trial justice should not have precluded defendant from exercising his right to have his counsel question him—whether his counsel was prepared to do so or not. Significantly, defendant's lawyer used the past tense when he notified the court that he "was unprepared" to conduct defendant's direct examination when he came to court that day. But he did not represent that he was unwilling or unable to do so when he later moved the court to allow defendant to testify, nor did counsel request the court to allow defendant to testify without his assistance. In any event, a brief continuance also may have helped to give the lawyer and his client whatever additional time, if any, they needed to prepare themselves for this important presentation. As the United States Supreme Court has stated, "[t]here is no justification today for a rule that denies an accused the opportunity to offer his own testimony." *Rock v. Arkansas*, 483 U.S. 44, 52, 107 S.Ct. 2704, 2709, 97 L.Ed.2d 37, 46 (1987). Unfortunately, however, the trial justice did just that by the erroneous way in which he handled this situation.

I also do not agree that defendant waived his right to have his attorney question him when he responded "no, no * * *" to the trial justice's previous suggestion that his attorney had to question him if he wished to testify. A review of the defendant's entire garbled response, using mostly broken English, suggests that he apparently wanted his lawyer to question a state-police witness. Although the trial justice was entitled to prevent defendant from engaging in that frolic and detour, I cannot conclude from the defendant's largely unintelligible and unresponsive statement that he knowingly and intelligently waived his right to counsel.[9]

9.  The exchange was as follows:
    "The Court: I have got to bring this thing to a head one way or the other. Do you wish to testify or don't you?
    "The Defendant: Yes, I will.
    "The Court: He has to ask you questions.
    "The Defendant: No, no, I want be finished the testimony question, the testimony, I can't say to the State Police this gentleman is the State Police. I often saw the second time I saw this gentleman. I want him to question him, things that's supposed to be questioned. I told him he's got to ask him, okay. This is the State Police I want him to question where I was when the civilian on me, they been on me, I was in the casino, how was I to have of this person killed. How could I take him to Mr. Rocchio's family's houses. This gentleman, he was a police officer surveilling me. Why you stopping me because it was never true.
    "The Court: Do you want to testify in front of a jury?
    "The Defendant: I'm going to start right from the beginning through the end. This case start in '92.
    "The Court: Mr. Connors, are you going to make a motion on behalf of your client? *I*

For the forgoing reasons I must respectfully dissent from the majority's opinion. I would have held that the trial justice violated the defendant's Sixth Amendment right to counsel. Because this error could not have been harmless, it required this Court to vacate the defendant's conviction and to remand this case for a new trial. I also do not believe that the defendant or his lawyer waived these errors by failing to object because, after all, the court had deprived him of the assistance of his counsel when it required him to testify without the help of his lawyer. Thus, I do not believe that we can fault the defendant for failing to object to same, after the trial court has deprived the defendant of his lawyer in this respect. This is especially so when, as here, his lawyer has advised the court that he vehemently disagreed with his client's decision to testify. I would reverse, vacate the conviction, and remand for a new trial.

*know he's made it abundantly clear he wants to take the stand.* I know probably it's not fair to you.

"The Defendant: A lot of thing is not fair. I'm in there for three years for something I never done." (Emphasis added.)